**BARRICK REALTY, INCORPORATED, an Indiana corporation, et al., Plaintiffs,**

v.

**CITY OF GARY, INDIANA, et al., Defendants.**

**Civ. No. 72 H 259(2).**

United States District Court, N. D. Indiana, Hammond Division. Jan. 18, 1973.

128

G. Edward McHie and Charles A. Myers, Hammond, Ind., for plaintiffs.

J. Robert Miertschin, Jr., Asst. City Atty., Gary, Ind., Ivan Bodensteiner, Valparaiso University, Valparaiso, Ind., for defendants.

MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

This action for declaratory and injunctive relief challenges the validity of Ordinance No. 4685 of the City of Gary, Indiana, which prohibits the display of "For Sale", "Sold", or similar signs on premises located in residential areas of the city.[1] The plaintiffs are Barrick

---

1. Ordinance No. 4685 provides, in pertinent part, as follows:

*Section 2.* It shall be unlawful for any person to construct, place, maintain, in-

Realty, Inc., Daniel W. Barrick, Jr., its president, and Thomas G. Harrison, a homeowner and resident of Gary. The defendants are the City of Gary and certain city officials. Plaintiffs contend that the ordinance is *ultra vires* under Indiana laws relating to the powers of municipal corporations, that it deprives them of rights secured by the constitutions of the United States and the State of Indiana, and that it violates federal and state statutory provisions relating to fair housing.

Plaintiffs commenced this action on October 6, 1972, by filing their complaint in Lake Superior Court, Room No. 1, Lake County, Indiana. The case was removed to this court by the filing of defendants' petition for removal on October 12, 1972. A hearing on plaintiffs' application for preliminary injunction was held at 2:00 P.M. on October 27, 1972, in the United States District Courtroom in Hammond, Indiana. At said time and place, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, it was ordered by this court that the trial on the merits be consolidated with the hearing on plaintiffs' application for preliminary injunction. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum shall constitute the court's findings of fact and conclusions of law.

## I. ABSTENTION

This action was properly removed to this court by defendants pursuant to 28 U.S.C. § 1441(b), original jurisdiction existing under 28 U.S.C. §§ 1331 and 1343(3) and (4). On October 17, 1972, plaintiffs filed a motion to remand this action to the state court. For the sake of convenience, the court's ruling on the motion, and the reasons therefor, have been included in this memorandum along with the decision on the merits. For the reasons set forth below, plaintiffs' motion to remand must be denied.

In support of their motion to remand, plaintiffs first contend that a resolution of the issues of state law raised by their complaint may make it unnecessary to reach the federal constitutional questions, and that this court, in accordance with the doctrine of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), should therefore abstain from exercising jurisdiction so that such questions of state law may be determined by the state court. Secondly, they argue that the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), requires this court to abstain in order to avoid federal interference with local enforcement of a penal ordinance. Neither of the theories advanced by plaintiff supports abstention under the circumstances of this case.

The policy embodied in Younger v. Harris, *supra,* has no application here where no prosecution is pending under the challenged ordinance and where declaratory as well as injunctive relief is sought. *See* Perez v. Ledesma, 401 U.S. 82, 120–130, 91 S.Ct. 674, 695–700, 27 L.Ed.2d 701 (1971) (Brennan, J., concur-

---

stall, or permit or cause to be constructed, placed, maintained, or installed any sign of any shape, size or form on any premises located in any Residential District Zoned R1 through R7 under Title 6, Chapter 6 of the Municipal Code of the City of Gary, Indiana.

"For purposes of this section the 'signs' above mentioned are hereby defined to mean any structure, and all parts composing the same, together with the frame, background or supports therefore which are used for advertising or display purposes, or any statuary, sculpture, molding, or casting used for advertising or display purposes, or any

flags, bunting or material used for display or advertising purposes, including, but not limited to, placards, cards, structures or areas carrying the following or similar words: 'For Sale', 'Sold', 'Open House', 'New House', 'Home Inspection', 'Visitors Invited', 'Installed By', or 'Built By'."

*Section 3.* Any person violating any of the provisions of this Ordinance shall upon conviction, be fined not less than Ten ($10.00) Dollars nor more than Five Hundred ($500.00) Dollars to which may be added imprisonment for a period not to exceed 180 days.

ring in part and dissenting in part); Wulp v. Corcoran, 454 F.2d 826, 830–832 (1st Cir. 1972). Application of the *Younger* doctrine here would not justify remanding the case to the state court as requested by plaintiffs, but would instead require dismissal for lack of authority to grant injunctive relief, thus forcing plaintiffs to violate the ordinance in order to obtain a hearing for their constitutional claims. *See* Younger v. Harris, *supra*. Viewed in this light, plaintiffs' reliance upon *Younger* is difficult to comprehend. Moreover, it should be noted that since the *Younger* doctrine rests heavily upon federal deference to administration by a state or municipality of its own criminal laws, *see* Younger v. Harris, *supra,* 401 U.S. at 44, 91 S.Ct. at 750, it would be inappropriate to apply the doctrine to the present case. The City of Gary removed the action to this court, specifically asked for a federal decision as to the validity of its ordinance, and vigorously argued against the application of *Younger*.

■ Sarfaty v. Nowak, 369 F.2d 256 (7th Cir. 1966), cited by the plaintiffs, is clearly distinguishable from the present case. In upholding the lower court's decision to abstain where the constitutionality of a penal provision was challenged prior to its enforcement, the Court of Appeals relied heavily upon the fact that the ordinance in that case might be interpreted and enforced by local officials in a manner which would avoid the constitutional issue. In the present case, the record is clear as to the interpretation given this ordinance by defendants and the imminent threat of its enforcement against these plaintiffs.

■ The traditional basis for abstention under the principles set forth in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is absent in this case. The ordinance challenged here is plainly worded and is not susceptible of a limiting construction which might avoid the constitutional question as to its validity.

Nor are the relevant state statutes defining the powers of municipal corporations in Indiana susceptible of a construction which would render this ordinance *ultra vires* under Indiana law. (See discussion of the merits, *infra.*) Where there is no ambiguity in a state statute, a federal court should not abstain but should proceed to decide the federal constitutional claim. Wisconsin v. Constantineau, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971); Zwickler v. Koota, 389 U.S. 241, 251, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967). The abstention rule applies only where "the issue of state law is uncertain". Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965).

■ Plaintiffs also demand abstention by this court in order to give the state courts an opportunity to decide the question of the constitutionality of the ordinance under the Indiana constitution. However, the state constitutional provisions upon which plaintiffs primarily rely in their brief, relating to equal protection, due process, and freedom of speech, are merely counterparts of federal constitutional provisions. In the absence of any substantial claim under the state constitution involving considerations separate and distinct from those of the federal constitution, abstention is not called for. *See* Reid v. Board of Education of City of New York, 453 F.2d 238, 244 (2d Cir. 1971), citing Wisconsin v. Constantineau, *supra*. Only in exceptional circumstances is a federal court justified in declining to decide a case properly within its jurisdiction by virtue of the abstention doctrine. Zwickler v. Koota, *supra*, 389 U.S. at 248, 88 S.Ct. at 395; Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1949). It is difficult to conceive of a case raising federal constitutional issues under the First and Fourteenth Amendments which would not usually raise practically identical issues under the constitution of the state in which the federal court is sitting. If this court were to abstain in every case

which presented such state constitutional questions, abstention would be the rule rather than the exception, resulting in a heavy and unwarranted burden of expense and delay upon litigants.

■ Finally, this court has found no case in which remand of a properly removed action has been the vehicle for abstention by a federal court. Remand would be tantamount to a dismissal from this court since it would result in the complete abdication of federal jurisdiction over the case. The better practice in abstention cases is retention of jurisdiction, rather than dismissal. Zwickler v. Koota, *supra*, 389 U.S. at 244, 88 S.Ct. at 393. *See also* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). In view of the foregoing conclusions with respect to abstention, however, it is unnecessary to decide whether remand to the state court would have been appropriate.

## II. THE MERITS OF THE DISPUTE

■■ Plaintiffs assert in their complaint, but do not argue in their brief, that the City of Gary had no power as a municipal corporation under Indiana law to pass Ordinance No. 4685 and that the ordinance is therefore *ultra vires* and invalid. This contention is wholly without merit. The ordinance was clearly authorized by Ind.Ann.Stat. § 48–1466 (Burns 1963 Repl.), I.C.1971, 18–1–1.5–16, which provides that:

[i]n addition to all powers specifically enumerated . . . every city may . . . exercise any power or perform any function necessary in the public interest in the conduct of its municipal or internal affairs, which is not prohibited by the Constitution of this state or the Constitution of the United States, and which is not specifically denied or pre-empted by law.

It is further provided that "[t]he powers of cities . . . shall be construed liberally in favor of such cities . . ." and that the legislature intended " . . . to grant to cities full power and right to exercise all governmental authority necessary for the effective operation and conduct of government with respect to their municipal and internal affairs. . . . " Ind.Ann. Stat. § 48–1473 (Burns 1963 Repl.), I.C. 1971, 18–1–1.5–23. Plaintiffs point to no provision which specifically denies or preempts the power of a city to pass an ordinance such as this one, and no such provision has been found by this court. The State of Indiana clearly intended that, in the absence of specific denial or preemption, the powers of a city are to be limited only by the federal and state constitutions.

■ Plaintiffs' complaint also asserts that this ordinance is contrary to the policies and provisions of the Federal Fair Housing Act, 42 U.S.C. § 3604, and the Indiana Civil Rights Law, Ind.Ann. Stat. § 40–2307 et seq., I.C.1971, 22–9–1–1, et seq. Again, the court has found no further reference to the Indiana statute in plaintiffs' brief. An examination of the federal and state statutes reveals that this ordinance is entirely consistent with their policies. Both statutes contain provisions which make "blockbusting" practices unlawful. The federal provision, to which the Indiana statute is similar, provides that:

. . . it shall be unlawful . . . (e) [f]or profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, or national origin.

As will be more fully discussed below, the Gary ordinance represents an effort to accomplish the same end to which this "blockbusting" statute is directed. Moreover, the ordinance is designed to promote the public policy of Indiana as expressed in Section 2 of the Indiana Civil Rights Law, Ind.Ann.Stat. § 40–2308 (Burns 1963 Repl.), IC 1971, 22–9–1–2, " . . . to eliminate segregation or separation . . . based sole-

ly on race, religion, color, sex, national origin or ancestry. . . . "

Plaintiff specifically argues that the ordinance violates subsection (d) of 42 U.S.C. § 3604, which makes it unlawful:

To represent to any person because of race, color, religion, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

Even assuming *arguendo* that the prohibition of a "for sale" sign on a house which is in fact for sale would amount to a "representation" that the house is not available, plaintiffs' argument must fail because the representation is not directed to anyone "because of [his] race, color, religion, or national origin". Whatever representation may be conveyed by the absence of a "for sale" sign is conveyed to all persons equally. Moreover, an already existing ordinance of the City of Gary, Ordinance No. 4458, contains a provision almost identical to the federal provision relied upon by plaintiffs. (Gary Civil Rights Ordinance § 6(A)(5)).

Plaintiffs attack the validity of Ordinance No. 4685 on the ground that it violates a number of state and federal constitutional guarantees. Some of the rights which plaintiffs claim to be infringed are the right to freedom of speech, the right to freely acquire, enjoy and dispose of property, and the right to travel. Plaintiffs assert that the ordinance denies them due process and equal protection of the laws and is not sustainable as a valid exercise of the police power. Specifically, plaintiffs rely upon the provisions of the First, Thirteenth and Fourteenth Amendments of the United States Constitution and Article I, sections 1, 9, 12 and 23 of the Constitution of the State of Indiana.

The initial question presented with respect to the constitutionality of the Gary ordinance relates to the proper standard of review to be applied. Plaintiffs argue that the ordinance infringes upon fundamental rights protected under the United States Constitution, including freedom of speech, the right to travel, and the right to freely acquire, enjoy, and dispose of property. Because of the claimed invasion upon these rights, they contend that the ordinance can be upheld only upon a showing that the prohibition of "for sale" signs is necessary to promote a "compelling governmental interest" of the City of Gary. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The Court of Appeals for the Seventh Circuit stated in Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), that where it attempts to limit or curtail the exercise of fundamental rights, the state has a "substantial burden of justification". 419 F.2d at 1036. The standard set forth in *Breen* was later applied in Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970), upon which plaintiffs rely in their brief.

■ However, this is not a case involving "fundamental rights" within the meaning of the above-cited cases. Plaintiffs' contentions that the ordinance infringes upon their rights of free speech under the First Amendment of the United States Constitution and Article I, section 9 of the Indiana Constitution are without merit. The Supreme Court has consistently held that reasonable regulations upon communications of a purely commercial nature are not subject to scrutiny under the First Amendment. Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942); Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); *see also* United States v. Hunter, 459 F.2d 205 (4th Cir. 1972). Plaintiffs cite no Indiana authority for a contrary rule under the state constitution, nor do they indicate any good reason why a "for sale" sign erected upon residential property, whether by a real estate broker or by the owner himself, should enjoy more protection under the First Amendment than any other form of commercial advertisement.

■ Plaintiffs further contend that the ordinance violates the homeowner's

fundamental right to travel, relying upon Shapiro v. Thompson, *supra*. They argue that an ordinance prohibiting "for sale" signs, by taking away an efficient method of selling a home, imposes a hardship upon the homeowner who wishes to move by making it more difficult for him to sell. Even assuming, however, that a seller may have more difficulty under this ordinance in finding a buyer for his home, under *Shapiro* this factor alone would not be sufficient to constitute an infringement upon the right to travel. First, the durational residency requirement for welfare benefits held invalid in *Shapiro* had as a specific objective the exclusion from the state of poor persons who needed or may have needed relief. Shapiro v. Thompson, *supra*, 394 U.S. at 628–629, 89 S.Ct. at 1328. Such an impermissible objective is not present in this case. Although the ordinance has as one of its objects the slowing down of outward migration of whites from the city, unlike *Shapiro*, the ordinance restricts or deters no one against his will. A person who wants to move is not prevented from selling his home and doing so; the ordinance merely regulates the manner in which he may advertise his property for sale so that others who want to stay will not be pressured into a decision to leave. Second, in *Shapiro* the one-year waiting period for welfare assistance had the effect of denying the basic necessities of life to needy residents. There is no showing here that any inconvenience, expense, or delay which might result from having to resort to newspaper advertisements to sell one's home rather than a "for sale" sign would be a hardship equivalent to that present in *Shapiro*. In cases applying *Shapiro* these factors, that is, (1) an impermissible objective, and (2) substantial hardship, have been held critical to a finding of infringement of the right to travel. *See* Starns v. Malkerson, 326 F.Supp. 234 (D.Minn.1970); Kirk v. Board of Regents of University of California, 273 Cal.App.2d 430, 78 Cal.Rptr. 260 (1969).

Having found no infringement of the concededly fundamental liberties of free speech and the right to travel, the court next considers plaintiffs' contentions based upon the right of the homeowner to freely dispose of his property. Unlike the other rights asserted by plaintiffs, an invasion of which would necessitate close scrutiny of the ordinance, the right to freely dispose of one's property does not rise to the dignity of the rights held by Breen v. Kahl, *supra*, to require a showing of substantial justification before they may be limited or curtailed. (The same is true of the contract rights of homeowners and real estate brokers which are claimed to be infringed by the ordinance.) The Supreme Court cases relied upon by the Court of Appeals in *Breen* involved, respectively, the right of privacy, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), equal protection (racial discrimination), McLaughlin v. Florida, 379 U.S. 184, 85 S. Ct. 283, 13 L.Ed.2d 222 (1964), and freedom of expression, United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). These rights are clearly of a higher order than the property rights asserted by plaintiffs. Crews v. Cloncs, *supra*, emphasized the "special right of an individual to control his physical person". 432 F.2d at 1264. Both *Breen* and *Crews* dealt with the right to wear one's hair at any length or in any desired manner, a right which *Breen* held to be "an ingredient of personal freedom protected by the United States Constitution". 419 F.2d at 1036.

Admittedly, any attempt to distinguish sharply between "personal liberties", on the one hand, and "property rights", on the other, must be approached with caution. *See* Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). However, plaintiffs have pointed to no case which has required a "compelling governmental interest" or a "substantial burden of justification" on the basis of an invasion of property rights. In determining the standard of

judicial review by which this ordinance should be tested, therefore, this court is governed by the principle that "the ownership of property and all incidental rights thereto are subject to reasonable limitations which governing authorities deem essential for the protection of the public health, safety, and welfare of the community". Walker v. State of North Carolina, 262 F.Supp. 102, 105 (W.D.N.C.1966), affirmed 4 Cir., 372 F.2d 129, cert. denied 388 U.S. 917, 87 S.Ct. 2134, 18 L.Ed.2d 1360. *See also* Sinclair Refining Co. v. City of Chicago, 178 F.2d 214 (7th Cir. 1949); East New York Savings Bank v. Hahn, 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945) (contract rights).

 For the reason that plaintiffs have failed to show that this ordinance invades the area of fundamental rights, the strict standard of judicial review required in cases such as *Shapiro* and *Breen* should not be applied in this case. Instead, the ordinance will be tested in accordance with traditional standards of due process and equal protection.

Plaintiffs' basic objection to the Gary ordinance is that it is not rationally related to a legitimate governmental purpose of the City of Gary, thereby denying them due process of law in violation of their rights under the Fourteenth Amendment and of similar guaranties under the Indiana Constitution. Simply stated, their complaint is that the ordinance will not tend to accomplish in fact what it is supposed to accomplish in theory, and that its infringement upon their rights is therefore unjustified.

The standard of reasonableness to be applied in reviewing this ordinance was stated in Department of Financial Institutions v. Holt, 231 Ind. 293, 108 N.E.2d 629, 634 (1952), as follows:

The law must not be arbitrary, unreasonable or patently beyond the necessities of the case. The legislature may not under the guise of protecting public interests arbitrarily interfere with private business or impose unnecessary restrictions upon lawful occupations. . . . "If the legislature, in the interests of the public health, enacts a law, and thereby interferes with the personal rights of an individual, destroys or impairs his liberty or property, it then, under such circumstances, becomes the duty of the courts to review such legislation, and determine whether it in reality relates to and is appropriate to secure the object in view. . . ."

 Likewise, in a federal context, due process "demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained". Nebbia v. People of State of New York, 291 U.S. 502, 525, 54 S.Ct. 505, 511, 78 L.Ed. 940 (1934), quoted and followed in United States v. Toledo, Peoria & Western Railroad Co., 280 F.Supp. 243 (N.D. Ind.1968).

The evidence in this case discloses that Ordinance No. 4685 is ultimately aimed at two distinct but related evils plaguing the City of Gary: first, widespread conditions of segregated housing; and second, the social and economic breakdown which accompanies rapid racial transformation of an entire neighborhood or area of the city. Directly related to both these problems is the mass flight of white residents from transitional areas of the city. To illustrate, population statistics show that between the years 1960 and 1970, the white population of Gary decreased by 24.9 percent while the non-white population increased by 34.9 percent. This rapid population turnover is caused in large part by the phenomenon of "panic selling". The immediate objective of the ordinance in question is to bring this massive population shift under control by reducing the rate of panic selling in Gary.

It is important first to define the problem of panic selling. "Blockbusting", or "panic peddling", is not the same as panic selling. Blockbusting refers to the practice of directly inducing or persuading an individual to sell his

home by representations as to the entry into his neighborhood of blacks or other minority groups. Panic selling is a broader problem which, although it may be prompted by blockbusting practices, does not depend upon direct inducements or face-to-face contact between people. Panic selling occurs when a resident who is otherwise disposed to remain in a neighborhood succumbs to any one or more of a number of pressures to move out when it appears that a minority racial group is beginning to enter. Among the fears of white residents as non-whites begin to move into their neighborhood are rising crime rates, overcrowded schools, declining property values, and a generally lower quality of life. As neighbors move away, there is also the feeling of being left behind, giving rise to the commonly-expressed fear, independent from any intrinsic hostility toward the incoming racial group, of being "the last white family on the block". Where these fears persist and intensify, panic selling generally occurs on a wide scale.

The evidence presented at the hearing of this case strongly supports the City's position, and this court finds, that the proliferation of "for sale" signs in a neighborhood aggravates the fears of white residents and has a strong tendency to provoke panic selling. Admittedly, "for sale" signs act upon the existing fears of white residents outlined above; however, the mere fact that these underlying fears exist does not, as plaintiffs suggest, compel the conclusion that "for sale" signs do not themselves cause panic. The impact of "for sale" signs is best illustrated by their obvious relationship to the very real, concrete fear of substantial pecuniary loss due to declining property values. A proliferation of "for sale" signs not only intensifies this fear, but also tends to transform it into reality by further depressing prices. Many white residents desire to remain in changing neighborhoods provided they can be maintained on a stable, integrated basis. The evils they fear most —crime, overcrowding, depressed property values, and being left behind—need not come to pass if stability can be achieved. A steadily increasing number of "for sale" signs tends, no less than overt blockbusting practices, to undermine any hope of such stability. Once this hope is lost and complete racial transformation appears inevitable, even those desiring to remain are virtually forced to sell. The challenged ordinance therefore removes a significant source of panic and selling pressure from those who wish to remain in a transitional neighborhood.

Presently existing fair housing laws on the local, state and federal levels attack the problem of segregation on two fronts: first, they attack discrimination in the sale and rental of housing, thereby softening the barriers to the entry of blacks into white areas; and second, they attack the causes of panic among whites, thereby slowing their flight from changing neighborhoods. It is readily apparent that integration of the races as a social goal cannot be achieved without addressing both ends of the problem. Laws which prohibit blockbusting represent an attempt to slow the rate of white migration by outlawing real estate practices which induce panic selling. In addition to federal and state blockbusting statutes, Section 6(c) of the Gary Civil Rights Ordinance (Ordinance No. 4458) makes such practices unlawful. Ordinance No. 4685, prohibiting "for sale" signs, represents a further effort to attack the problem on the same front.

The constitutionality of "blockbusting laws" is now beyond question. *See* United States v. Mitchell, 327 F. Supp. 476 (N.D.Ga.1971); United States v. Mintzes, 304 F.Supp. 1305 (D.Md. 1969); Chicago Real Estate Board v. City of Chicago, 36 Ill.2d 530, 224 N. E.2d 793 (1967). The only difference between those laws and the ordinance here in question lies in the means employed to attack the problem of panic selling. This court finds the prohibition of "for sale" signs no less rationally related to this objective, or to the ultimate

objectives of integration and social and economic stability, than the prohibition of overt blockbusting practices.

▉ Plaintiffs claim that the ordinance infringes unnecessarily upon the rights of the individual homeowner, pointing out that such persons are generally exempt from the provisions of blockbusting statutes. Plaintiffs fail to explain, however, how a more narrowly drawn "for sale" sign ordinance containing a similar exemption could accomplish the same purpose. To permit homeowners but not realtors to erect "for sale" signs would clearly render the ordinance of no effect whatever. Thus, no showing has been made that the ordinance will operate with unreasonable harshness upon such homeowners or that the means employed by it are "patently beyond the necessities of the case". Department of Financial Institutions v. Holt, *supra*, 108 N.E.2d at 634. Individual real property owners are subject to reasonable regulation under the police power of the city, even where such regulation may result in substantial loss to the owner, because of the paramount interest of the public. Nebbia v. People of State of New York, *supra*, 291 U.S. at 523–528, 54 S.Ct. at 510–512; Sinclair Refining Co. v. City of Chicago, *supra*, 178 F.2d at 216–217. Such regulation may include restrictions upon the right to erect "for sale" signs, just as it may touch any other right incidental to the ownership of property. *See, e. g.,* Burk v. Municipal Court of Whittier, 229 Cal. App.2d 696, 40 Cal.Rptr. 425 (1964).

▉ Because no First Amendment or other "fundamental rights" are involved here, the rule stated in Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960), and recently quoted in Police Department of City of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 2293, 33 L.Ed.2d 212 (1972), that a legitimate governmental purpose "cannot be pursued by means that broadly stifle personal liberties when the end can be more narrowly achieved", has no application to this case. Even if such a rule were applied here, however, the evidence would require a finding that the means employed by this ordinance to reduce panic selling are narrowly tailored to that objective. The potential public benefit from the ordinance far outweighs the harm to realtors and homeowners who wish to use "for sale" signs. The additional expense or delay which might result from having to use alternative means of advertising is minimal. To the extent that a real estate firm suffers a loss of business due to a dropoff in panic selling conditions, it has no legitimate complaint.

The ordinance in question is neither arbitrary nor unreasonable. The prohibition of "for sale" signs in residential areas of the city is a reasonable and appropriate means of achieving important governmental objectives of the City of Gary and does not infringe unnecessarily upon the rights of plaintiffs. The ordinance is therefore a valid exercise of the police power and does not violate due process.

▉ In light of the foregoing findings, plaintiffs' Thirteenth Amendment claim, based upon their unsupported assertion that the ordinance inhibits integration and perpetuates racial ghettos, Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), requires little discussion. This court has found as a matter of fact that one of the purposes of the ordinance is to promote, rather than impede, integration, and that the means employed have a reasonable tendency toward the achievement of that objective. Any allegation that the purpose of this ordinance was to exclude racial minorities from white neighborhoods is wholly without evidentiary support. It is not the function of this court to strike down otherwise valid laws on the basis of a mere assertion of a wrongful purpose or motive. United States v. O'Brien, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968); McCray v. United States, 195 U.S. 27, 56, 24 S.Ct. 769, 776, 49 L.Ed. 78 (1904).

▉ Finally, plaintiffs argue that the prohibition of "for sale" signs without a similar ban on "for rent" signs constitutes a denial of equal pro-

tection in violation of the Fourteenth Amendment of the United States Constitution and Article I, section 23 of the Indiana Constitution. This contention must fail when considered in light of the objective of the ordinance to minimize panic selling. "For sale" signs cause panic by conveying the message to those who observe them that resident homeowners are selling because they want to get out of the community. It is these resident homeowners who provide a community with a foundation of stability; any indication of their flight from the area is bound to be disquieting to their neighbors. Because of the relatively more rapid rate of turnover in rental property under normal conditions, the presence of "for rent" signs does not ordinarily signal a similar abandonment of the community due to the pressures of change. Nor does a "for rent" sign convey a message of declining property values since an owner/lessor would presumably sell his property if he doubted the future value of his investment. In short, there is ample basis in reason upon which the City of Gary could have distinguished between "for sale" signs and "for rent" signs for the purpose of regulating one and not the other. Such a rational basis for a legislative classification is all that is required to satisfy the demands of equal protection under either the federal or state constitution. *See* McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Flemming v. Nestor, 363 U.S. 603, 80 S. Ct. 1367, 4 L.Ed.2d 1435 (1960); Tinder v. Clarke Auto Co., 238 Ind. 302, 149 N. E.2d 808 (1958).

For the foregoing reasons, this court finds Ordinance No. 4685 to be well within the power of the City of Gary to protect the public health, safety, and welfare, and entirely consistent with the Constitutions of the United States and the State of Indiana.

The motion to intervene filed October 24, 1972, by a number of Gary residents desiring to intervene as defendants in the case is denied. The motion was filed only three days prior to the hearing in this case, requiring the court to postpone its ruling on the motion until after the hearing. The attorneys for the applicants for intervention were granted leave to file a brief as *amicus curiae*, which they failed to do. The lateness of the motion and the subsequent failure to file a brief indicates either a lack of interest in the case or a belief that the interests of the applicants were adequately represented by the City defendants.

Defendants filed with their answer to plaintiffs' complaint on October 19, 1972, a counterclaim requesting a preliminary injunction and a declaration of the validity of Ordinance No. 4685. The request for injunction was disposed of by the City's voluntary agreement not to enforce the ordinance until this court's decision on the merits. The defendants' request for a declaratory judgment of validity is rendered moot insofar as the issues presented to this court are concerned by the judgment and decree.

### ORDER

Accordingly, it is ordered and decreed that plaintiffs' prayer for injunctive and declaratory relief be, and it is hereby denied and plaintiffs' complaint is now dismissed. Costs taxed to plaintiffs.