**BARRICK REALTY, INCORPORAT-ED, et al., Plaintiffs-Appellants,**

v.

**CITY OF GARY, INDIANA, et al., Defendants-Appellees.**

No. 73–1279.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1973.

Decided Jan. 24, 1974.

G. Edward McHie, Charles A. Myers, Hammond, Ind., for appellant.

Sylvia Drew, New York City, amicus curiae.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for United States.

J. Robert Miertschin, Jr., Gary, Ind., Ivan E. Bodensteiner, Valparaiso University School of Law, Valparaiso, Ind., for defendants-appellees.

Before CUMMINGS, STEVENS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

This appeal involves the validity of ordinance No. 4685, adopted by the City of Gary, Indiana, on July 25, 1972, forbidding the use of "For Sale" signs in residential zones of that city. The plaintiffs are a Gary realty company, its president, and a homeowner who listed his home for sale by the other plaintiffs. They sought a permanent injunction against the enforcement of the ordinance and a declaratory judgment that it is unconstitutional. In a carefully reasoned opinion, the district court denied relief. Barrick Realty, Inc. v. City of Gary, Indiana, 354 F.Supp. 126 (N.D.Ind.1973). In affirming, we adopt that opinion as our own as to all issues urged in this Court. We also add a few words in further support of the district court's decision.

The ordinance in question provides in pertinent part as follows:

"*Section 2.* It shall be unlawful for any person to construct, place, maintain, install, or permit or cause to be constructed, placed, maintained, or installed any sign of any shape, size or form on any premises located in any Residential District Zoned R1 through R7 under Title 6, Chapter 6 of the Municipal Code of the City of Gary, Indiana.

"For purposes of this section the 'signs' above mentioned are hereby defined to mean any structure, and all parts composing the same, together with the frame, background, or supports therefore which are used for advertising or display purposes, or any statuary, sculpture, molding, or casting used for advertising or display purposes, or any flags, bunting or material used for display or advertising purposes, including, but not limited to, placards, cards, structures or areas carrying the following or similar words: 'For Sale', 'Sold', 'Open House', 'New House', 'Home Inspection', 'Visitors Invited', 'Installed By', or 'Built By'.

"*Section 3.* Any person violating any of the provisions of this Ordinance shall upon conviction, be fined not less than Ten ($10.00) Dollars nor more than Five Hundred ($500.00) Dollars to which may be added imprisonment for a period not to exceed 180 days."

█ Five months after the promulgation of the district court's opinion, the Supreme Court decided Pittsburgh Press Company v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669. There the Court expressed the view that commercial speech receives only limited protection from the First Amendment. Like the Pittsburgh ordinance, the Gary ordinance is directed at signs that merely "Propose a commercial transaction" (413 U.S. at p. 385, 93 S.Ct. at p. 2558), whether erected by real estate brokers or individual house owners. The Supreme Court found a further basis for its *Pittsburgh Press* decision in the illegality of the transaction proposed:

"Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." 413 U.S. at 389, 93 S.Ct. at 2561.

█ That reasoning is not applicable with full force here, because "For Sale" signs are forbidden even if they do not contain an explicit reference to race analogous to the sex designations in the help-wanted advertisements in *Pittsburgh Press*. However, the effect of the "For Sale" signs was inconsistent with public policy as expressed in the Gary Civil Rights Ordinance, Section 2 of the Indiana Civil Rights Law, and the federal Fair Housing Act.[1] The history of the ordinance banning "For Sale" signs shows that it was aimed at panic selling and that its purpose was to halt resegregation. It was passed in response to the presence of numerous "For Sale" signs in some white neighborhoods, which caused whites to move *en masse* and

1. See Gary Ordinance No. 4458; Ind.Code § 22-9-1-2(a), (d) [Burns Ind.Stat.Ann. § 40-2308(a), (d)]; 42 U.S.C. § 3604(e). For anecdotal and quantitative data on the related problems of blockbusting and panic peddling and their effect on both races, see Comment, "Blockbusting: Judicial and Legislative Response to Real Estate Dealers' Excesses," 22 DePaul L.Rev. 818 (1973); "Blockbusting: A Novel Statutory Approach to an Increasingly Serious Problem," 7 Colum.J.L. & Soc.Prob. 538 (1971); Note, "Blockbusting," 59 Geo.L.J. 170 (1970). For a collection of state court decisions on the validity of anti-blockbusting and panic peddling ordinances, see Comment, "The Constitutionality of a Municipal Ordinance Prohibiting 'For Sale,' 'Sold,' or 'Open' Signs to Prevent Blockbusting," 14 St.L.U. L.J. 686 (1970).

blacks to replace them. There is evidence in the record that some real estate brokers who placed these signs (not including any plaintiffs) actively encouraged resegregation by unlawfully urging whites to sell quickly before they had black neighbors and lower property values. Plaintiffs' signs proposed a commercial transaction that is part of a pattern of transactions, all of which taken together lead to a result that the City of Gary can properly try to prevent. Accordingly, it can be said here, as in *Pittsburgh Press*, that "the restriction on advertising is incidental to a valid limitation on economic activity."

The fact that the "For Sale" signs convey a commercial message is not in itself sufficient to meet the First Amendment attack. The history of the Gary ordinance indicates that the "For Sale" signs communicate a message to neighbors and visitors, as well as to prospective purchasers.[2] In a sense, the very purpose of the ordinance is censorial. First Amendment as well as commercial interests are therefore affected by this ordinance. It is, nevertheless, clear that the signs are not "pure speech" as that term has been used in cases holding that activities which contain a mixture of speech and conduct are subject to state regulation. See, *e. g.*, Cox v. Louisiana, 379 U.S. 536, 554–555, 85 S.Ct. 453, 13 L.Ed.2d 471; see also Cox v. Louisiana, 379 U.S. 559, 563–564, 85 S.Ct. 476, 13 L.Ed.2d 487. Unquestionably, the municipal interests which justify the restriction of commercial activity in residential neighborhoods support a prohibition against the display of commercial signs. See Euclid v. Ambler Co., 272 U.S. 365, 387–397, 47 S.Ct. 114, 71 L.Ed. 303. The city's interest in attempting to encourage and maintain stable integrated neighborhoods provides important added support. Since the record does not indicate that the ordinance has frustrated the ability of prospective buyers to find the homes in Gary which are for sale, and since alternate means of communication are available to the plaintiffs, the regulation is permissible.

■ Plaintiffs also attack the ordinance on Due Process and Equal Protection grounds. They have not pressed the equal protection claim discussed by Judge Eschbach. See 354 F.Supp. at 136–137. The argument labeled equal protection in their briefs in this Court —that there is no reason to apply the ordinance to certain kinds of property —is simply an additional substantive due process argument. Plaintiff's substantive due process arguments rely on Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937, and Coppage v. Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441. If those cases have any remaining vitality, it is clear that this ordinance is not sufficiently arbitrary or capricious to fall under their doctrine. One of plaintiffs' exhibits reveals that in 1972, prior to the date the ordinance became effective, nearly three-fourths of Barrick Realty's home sales were to persons first attracted to the property by means other than a "For Sale" sign. Thus the ordinance does not make it unduly difficult to sell a house; it only makes it slightly more expensive to do so. Accordingly, the burden on property rights is small, and any effect on the right to travel is insignificant.

■ It is urged that the ordinance is racially discriminatory in violation of the Thirteenth Amendment because it makes it more difficult for blacks to move into previously all white neighborhoods. But the right to open housing means more than the right to move from an old ghetto to a new ghetto. Rather, the goal of our national housing policy is to "replace the ghettos" with " 'truly integrated and balanced living patterns' " for persons of all races. Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 211, 93 S.Ct. 364, 34 L.Ed.2d 415. It is clearly consistent with the Constitution and federal housing policy for Gary to pursue a policy of

---

2. See Judge Eschbach's discussion in 354 F.Supp. at 135 and 137.

encouraging stable integrated neighborhoods and discouraging brief integration followed by prompt resegregation, even if an effect of that policy is to reduce the number of blacks moving into certain areas of the city. See Otero v. New York City Housing Authority, 484 F.2d 1122 (2d Cir. 1973); Shannon v. United States Department of Housing and Urban Development, 436 F.2d 809 (3d Cir. 1970). The NAACP Legal Defense and Educational Fund as *amicus curiae* has argued that "[H]ere a legislative body has acted to balance individual and collective interests to ensure constitutionally mandated open housing" and that "The interest of both the black and white citizens in stable communities outweighs any minor inconvenience of having to utilize alternate methods for advertisement and information gathering" (Br. 16). We agree and add one further comment. An allegation that this ordinance is unconstitutional as applied because it is being used to preserve all white neighborhoods from any significant integration would subject the ordinance and its application to the strictest scrutiny. But the district court expressly found that any such allegation was "wholly without evidentiary support." 354 F.Supp. at 136.

Plaintiffs appear to rely on Burk v. Municipal Court of Whittier, 229 Cal. App.2d 696, 40 Cal.Rptr. 425 (1964). There the City of Whittier enacted an ordinance barring real estate brokers from erecting "For Sale" signs in order to protect residential property from the encroachment of commercial activities. Plaintiffs note that unlike the Gary ordinance, the Whittier ordinance permitted homeowners to erect their own signs. But the California court did not hold that the ordinance would have been unconstitutional if that exception were not included. In fact, it has recently been held that an ordinance banning "For Sale" signs violates the Due Process and Equal Protection Clauses by not covering homeowners as well as real estate brokers. DeKalb Real Estate Board, Inc. v. Chairman and Board of Commissioners, 372 F.Supp. 748 (N.D.Ga.1973). We need not endorse that position to agree with the United States, in its brief as *amicus curiae,* that the posting of "For Sale" signs by private homeowners is commercial in character and therefore subject to regulation. See United States v. Hunter, 459 F.2d 205, 213–215 (4th Cir. 1972), certiorari denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189. As noted in the NAACP Defense Fund brief, "only an ordinance that prohibits *any* person from placing 'for sale' signs is a comprehensive solution" (Br. 12; emphasis in original).

We decline the invitation to consider aspects of the ordinance not involved here. Our holding is confined to the facts presented.

Judgment affirmed.