ALLISON ET AL., APPELLEES, *v.* CITY OF AKRON, APPELLANT
AND CROSS APPELLEE; WEST SIDE NEIGHBORS, INC., ET AL.,
APPELLEES AND CROSS APPELLANTS. ■

[Cite as Allison v. Akron (1974), 45 Ohio App. 2d 227.]

(No. 7373—Decided June 5, 1974.)

*Mr. Gary Rosenblithe,* for appellees Howard M. Allison et al.

*Mr. William R. Baird* and *Mr. Charles W. Zindle,* for appellant.

*Messrs. Buckingham, Doolittle & Burroughs* and *Mr. Timothy F. Scanlon,* for appellees West Side Neighbors, Inc., and William G. Stepansky.

MAHONEY, J. This matter is an appeal and cross-appeal from a judgment of the Court of Common Pleas of Summit County, finding Ordinance No. 375-1973 of the city of Akron unconstitutional, and enjoining the city and its agents and employees from its enforcement.

That ordinance provides in substance as follows:

"Ordinance No. 375-1973 establishing an experimental program within a portion of the city of Akron for the elimination of real estate signs within residential areas; and prescribing penalties for the commission of misdemeanors herein set forth.

"Whereas, the display of real estate signs in residential neighborhoods often has a disruptive effect by creating tensions among residents; and

"Whereas, the proliferation of real estate signs in an area may create a situation which is detrimental to the maintenance of a stablized neighborhood, as well as stability in market value of the homes therein; and

"Whereas, this council believes that an experimental program should be carried out in a specific area of the city, as a demonstration that the elimination of real estate signs can make a significant contribution to neighborhood stability.

"Now, therefore, be it enacted by the council of the city of Akron:

"Section 1. That it shall be unlawful for any person to install or maintain a real estate sign on any premises located in an U-1, U-2 Use District within the demonstration area.

"A. Definitions: For purposes of this section of this ordinance * * *

" 'Demonstration Area' shall be that area located within the city of Akron and bounded by the following streets * * *.

" 'Real estate sign' shall mean any structure * * * for advertising or display purposes * * * including but not limited to, placards, cards, structures or areas containing the following words or similar words: 'For Sale', 'Sold', 'Open House', 'New House', 'Home Inspection', 'Open for

Inspection', 'Visitors Invited', 'Installed by', or 'Built by'.

"Section 2. That this ordinance shall be effective until midnight of the three hundred sixty-fifth day after its passage.

"Section 3. That any person violating the terms of this ordinance shall be guilty of a misdemeanor * * *.

" * * *.

"Passed: June 12, 1973 * * *."

Plaintiff Howard M. Allison resides within the "demonstration area," and desires to erect signs offering his house for sale. The "demonstration area" consists of all of three U. S. Census tracts, and part of a fourth, wherein the vast majority of residents are white home owners. The 1970 census shows an influx of the black population, over the 1960 census, into the "demonstration area."

The trial court found that the ordinance is unconstitutional, holding that: (1) it is a law of general nature which should have uniform application throughout the city, as is provided by Section 26 of Article I of the Ohio Constitution; (2) it creates an arbitrary and unreasonable class which discriminates against the plaintiff and denies him equal protection of the laws, as guaranteed by Section 2 of Article I of the Ohio Constitution, and the Fourteenth Amendment to the United States Constitution.

From that judgment, the defendant, city of Akron, has filed an appeal, and the defendants, West Side Neighbors, Inc., and William Stepansky, have filed a cross-appeal.

The city of Akron says that the trial court erred in finding that Ordinance No. 375-1973 is: (1) "arbitrary and unreasonable"; (2) "a law of general nature that does not have a uniform operation"; (3) "a denial of equal protection of the law."

The defendants, West Side Neighbors, Inc., and William Stepansky, assign as errors that:

"I. The lower court erred in holding that Akron Ordinance No. 375-1973 is a law of general nature without uniform operation and, therefore, constitutionally infirm by virtue of Article 2, Section 26 of the Constitution of Ohio.

"II. The lower court erred in holding that Akron Ordinance No. 375-1973 constitutes a denial of equal protection of the law.

"III. The lower court erred in holding that the evidence before it was sufficient to overcome the presumption that legislative classifications are reasonable, fair and based on legitimate grounds for distinction.

"IV. Whether Akron Ordinance No. 375-1973, prohibiting the use of real estate for sale or sold signs within the designated 'demonstration area' denies the right of free speech secured under the First Amendment to the Constitution of the United States."

We will regard the first and third assignments of error of the city of Akron as the same as the second and third assignments of error of the cross-appellants, and consider the second assignment of error of the city of Akron as the same as the first assignment of error of the cross-appellants.

We concur with the cross-appellants as to their first assignment of error; however, we feel that the judgment of the trial court is sustained by the facts of this case because the classification created discriminates against the plaintiff in an arbitrary and unreasonable manner, and denies him equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, and Section 2, Article I of the Ohio Constitution.

We will discuss the second and third assignments of error of the cross-appellants only.

When considering the constitutionality of an ordinance under the Constitution of Ohio, and the Constitution of the United States, the law is clear that an exercise of the police power will be held valid if it bears a real and substantial relationship to the public health, safety, morals, and general welfare, and so long as it is not arbitrary, unreasonable or capricious. See: *Benjamin* v. *Columbus* (1957), 167 Ohio State 103. It is axiomatic that a court may not substitute its own social and economic beliefs for the judgment of legislative bodies, and that courts are not concerned with the wisdom, need, or appropriateness of

legislation. See *Ferguson* v. *Skrupa* (1963), 372 U. S. 726.

Assuming arguendo that the objective here is constitutionally permissive, the ordinance operates solely on the property owners in one section of the city of Akron. The census tracts of areas outside the "demonstration area" mentioned in the ordinance show that there are other white property owners who are in the identical situation; they are not covered by the ordinance but must be considered to be in the same class as the plaintiff Allison in this case.

The cross-appellants argue that the legislative authority has wide discretion and urge upon the court the reasoning of the cases of *City of Xenia* v. *Schmidt* (1920), 101 Ohio St. 437; and *Yee Bow* v. *City of Cleveland* (1919), 99 Ohio St. 269. However, the rule in these cases still requires the ordinance to operate equally upon all members of a constitutional class.

The *Xenia* case concerns an ordinance regulating temporary street obstructions, and it operated equally as to all named therein, even though some possible obstructions were not mentioned. The *Yee Bow* case concerns an ordinance regulating laundries that had more than thirty customers per week. The ordinance was upheld because it operated uniformly and geographically upon the class. Likewise, *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, applied uniformly to all owners of five or more dwelling units; and *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, applies uniformly to all junkyards as distinguished from scrapyards.

In the instant case, an arbitrary geographical distinction is made so that the ordinance does not operate uniformly and, thus, it is an unreasonable discrimination. It is certainly an invidious discrimination where part of a class is singled out for an experiment to perform an empirical study. This is clearly prohibited by the United States and Ohio Constitutions as a denial of equal protection of the law.

The cross-appellants further argue that the city of Akron may lawfully attack only one part of a problem at a time (*Williamson* v. *Lee Optical of Okla., Inc.* [1955], 348

U. S. 483) and the classifications need not be perfect (*Dandridge* v. *Williams* [1970], 397 U. S. 471). Nor do they have to be mathematically precise and may result in some inequity (*Lindsley* v. *Natural Carbonic Gas Co.* [1911], 220 U. S. 61; and *Jefferson* v. *Hackney* [1972], 406 U. S. 535).

We submit that each of these cases is readily distinguishable. The *Lee* case dealt with a requirement that the entire class of opticians make lenses only from prescriptions and it exempted sellers of "ready-to-wear" glasses. Here, the distinction in class had a rational basis and the class requirements were uniform. The *Lindsley* case turned on the failure of the appellant to show how it was discriminated against. The *Dandridge* and *Jefferson* cases are cases where the Supreme Court upheld statutory and constitution limitations on the amount of money welfare recipients could receive under federally assisted programs. Their classification problems are best answered by the court's own remarks in the *Dandridge* case, commenting on *Goldberg* v. *Kelly* (1970), 397 U. S. 254, and *Stewart Machine Co.* v. *Davis* (1937), 301 U. S. 548, at 487:

"* * * [T]he intractable economic, social and philosophical problems presented by public welfare assistance programs are not the business of this Court. * * * [T]he Constitution does not empower this Court to second guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriads of potential recipients."

There is a second reason why we hold Ordinance No. 375-1973 unconstitutional. Considering the objective or end sought by the ordinance, we find that the means employed not only impinges upon a fundamental right of the home owner, but that it is predicated upon a "suspect" classification. The city of Akron has failed to show, not merely that the ordinance is rationally related to a valid public purpose, but also that it is necessary to the achievement of a compelling city interest. *Eisenstadt* v. *Baird* (1972), 405 U. S. 438; *Shapiro* v. *Thompson* (1968), 394 U. S. 618; *Sherbert* v. *Verner* (1963), 374 U. S. 398; *Bates* v. *Little Rock* (1960), 361 U S. 516; *Korematsu* v. *United States* (1944),

323 U. S. 214; and *Skinner* v. *Oklahoma ex rel. Williamson* (1942), 316 U. S. 535.

The stated objective of Ordinance No. 375-1973 is to conduct an experiment in a "demonstration area" and thereby to show how the elimination of "for sale" signs will help to stop resegregation, allegedly caused by panic-selling and, thus, help to achieve "racial stability" in a neighborhood. The ordinance primarily operates upon white property-owners to impede their selling and, hopefully, to encourage them to remain in the transitional area. Obviously, the denial of signs will mean the expenditure of money for other kinds of advertising and will likewise cut down on the available transient passing buyer's market.

Since this ordinance has race as its classification (regardless of how it is disguised), it is a "suspect" classification and, therefore, must pass the test of strict scrutiny by being necessary to "achieve a compelling city interest."

This strict scrutiny test is also applicable for another reason. In the penumbra of rights which the Supreme Court has found and declared to be fundamental around the first eight amendments, and/or reserved by the Ninth Amendment to the United States Constitution, is a right that is obviously implied and concomitant with the freedoms of travel; the right of association; the right of privacy; the right to work; the right to fully own, enjoy, and dispose of property, and the right to be free from unwarranted government intrusion in matters of family, and childrearing. That right is the right to live where one chooses and, in effect, to select one's own neighbors and to move if one does not like them. It is this very right that we are seeking for blacks, and other minority races. Ordinance No. 375-1973, in reality, deters both blacks and whites in choosing a place where they want to live and rear their children.

The stipulations of fact in this case do not offer any evidence to show the number of black and the number of white owners of real estate, and the number of sale transactions. There is no evidence relating to "panic-selling" or "block-busting," or that either has occurred. For that matter, there is no evidence that property values decline

etc., or that crime increases, because blacks move into a white neighborhood.

There was some evidence that there had been a percentage increase of the number of blacks, in certain census tracts, and a decrease of whites in the 1970 census over the 1960 census.

We find, therefore, that the city of Akron has failed to show that the impostion of the burden upon the fundamental right to choose where one lives, by the use of a classification based upon race, is justified by a compelling interest. We find that Ordinance No. 375-1973 of the city of Akron creates an impermissible constitutional burden on that fundamental right. The ordinance here has the effect of ''chilling'' the assertion of a fundamental right. *United States* v. *Jackson* (1968), 390 U. S. 570.

The cross-appellants argue that a United States District Court for the Northern District of Indiana has approved a similar ordinance for Gary, Indiana. *Barrick Realty* v. *City of Gary* (1973), 354 F. Supp. 126 (affirmed by the Court of Appeals for the Seventh Circuit, 491 F. 2d 161). That case is obviously distinguishable from the instant case in that the Gary ordinance banned ''for sale'' signs in the entire city. We also find that the record in the instant case is considerably different from the *Barrick* case.

Since the trial court did not discuss or predicate its decision on what the cross-appellants have listed as their fourth assignment of error, we will not discuss the first amendment's freedom of speech or expression.

Finding no prejudicial error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BRENNEMAN, P. J., and VICTOR, J., concur.