Frank R. Bayger, J.
The plaintiffs seek judgment declaring section 352 of chapter VII of the Ordinances of the City of Buffalo unconstitutional, illegal and void. The ordinance in question prohibits in the broadest possible terms, the use or display within the City of Buffalo of any and all types of "for sale” or "sold” signs or other on-site advertising designed or intended to publicize the availability for purchase, or the sale of certain specified types of residential property.
The complaint alleges multiple causes of action founded *562 upon constitutional or statutory grounds and prays for relief in the form of a permanent injunction against further enforcement of the questioned ordinance. The city’s answer denies any impropriety or illegality in the council’s enactment of this ordinance and affirmatively questions the plaintiffs’ standing to sue and the procedural validity of the present action. The city primarily relies, however, upon the prior affirmance of similar legislation by various State and/or Federal courts (see, e.g., Linmark Assoc. v Township of Willingboro, 535 F2d 786; Barrick Realty v City of Gary, Ind., 491 F2d 161). Issue having been joined, the plaintiffs have now moved for summary judgment pursuant to CPLR 3212 on the grounds that the pleadings fail to raise any triable issues of fact and that continued enforcement of this ordinance must be enjoined as a matter of law.
Subsequent to argument and submission of the instant motion, the United States Supreme Court granted certiorari to review the Circuit Court’s afffirmance of the subject legislation in the Linmark case (supra). The purpose, language and sanctions of that legislation being substantially similar to the ordinance here in question, it was agreed that decision of this motion should be withheld pending a presumably determinative pronouncement by the Supreme Court. On May 2 the court held the Willingboro legislation to be in violation of the First Amendment to the United States Constitution (Linmark Assoc. v Willingboro, 431 US 85.) After careful review, I find that decision to be, in fact, determinative of the principal issues raised herein.
Like the municipal legislation of Gary, Indiana, Willingboro, New Jersey, Shaker Heights, Ohio and Oak Park, Michigan (briefs of amici curaie, Linmark Assoc. Township of Willingboro, supra), the Buffalo ordinance represents a reasoned, well-intended effort to eliminate the unscrupulous real estate activities and substantial community damage that are so undeniably associated with racial "blockbusting” and the fear-engendered "panic selling” of residential property by white residents (cf. Barrick Realty v City of Gary, Ind., 354 F Supp 126, affd 491 F2d 161). The proponents of such legislation contend, with good reason, that the display of "sold” and "for sale” signs form an integral part of "blockbusting” activity and constitute unnecessarily visible evidence of neighborhood change and serve to create unfounded, unreasonable fears of diminished property values and neighborhood deterioration *563 and thus promote "panic selling” on the part of the remaining residents. The resultant effect upon the delicate process of neighborhood integration is obvious. Buffalo’s ordinance is designed to foster the natural realization of economically stable, racially integrated, heterogeneous neighborhood housing as envisioned by our State and Federal "fair housing” laws (cf. Trafficante v Metropolitan Life Ins. Co., 409 US 205). Such an objective is an admittedly appropriate subject for municipal legislation, but as legitimate and even praiseworthy as that objective may be, it may not be accomplished by unconstitutional or illegal means (Linmark Assoc. v Willingboro, supra; People v Remeny, 40 NY2d 527).
Legislative restraint of free speech is prohibited by the Constitutions of the United States and the State of New York (US Const, 1st Amdt; NY Const, art I, § 8). The latter provides in pertinent part that "Every citizen may freely speak, write, or publish his sentiments on all subjects * * * and no law shall be passed to restrain or abridge the liberty of speech or of the press” (NY Const, supra). This right to speak freely on every subject admittedly extends to and includes all forms and manner of "speech”, however it is spoken, written, published, communicated or conveyed, and clearly includes the right to convey information by means of appropriate signs or other public advertising. This much the defendants admit. They contend, however, that there exists a distinction between commercial communication and "pure” or noncommercial speech and that commercially motivated communications such as "for sale” or "sold” signs enjoy a lesser degree of constitutional protection than that which is afforded conventional, non- commerical speech. Under this supposed exception to the rule of constitutionally guaranteed free speech, a municipality is said to be authorized to regulate and even prohibit such commercial communications as may be deemed to be detrimental to the legitimate interests of the community (cf. Barrick Realty v City of Gary, Ind., supra). But such an exception is unrecognized by our highest court.
Linmark Assoc. v Willingboro (431 US 85, supra) and the earlier cases of Virginia State Bd. of Pharmacy v Virginia Citizens Council (425 US 748) and Bigelow v Virginia (421 US 809) have now made it abundantly clear that any constitutional distinction between commercial and noncommercial speech is more apparent than real. These cases clearly hold that "commercial speech is not 'wholly outside the protection *564 of the First Amendment’.” (431 US 91, supra.) These decisions indicate that while some appropriate forms of commercial speech regulation such as prohibitions against false or misleading advertising may be permissible, the free flow of truthful commercial information which our citizens are otherwise entitled to communicate or receive may not be lawfully impaired or suppressed. This is said to be particularly so where the only basis for an attempted regulation of truthful commercial speech is a governmental concern that persons receiving that information may act thereon in a manner inconsistent with their own self-interest and the public interest of the community. As stated by the court in Linmark, "[I]f dissemination of this information can be restricted, then every locality in the country can suppress any facts that reflect poorly on the locality, so long as a plausible claim can be made that disclosure would cause the recipients of the information to act 'irrationally’.” (431 US 85, 96, supra.) Municipalities are therefore without power or authority to accomplish what they perceive to be the peoples’ best interests by denying them information that is neither false nor misleading. The furtherance of the public’s best interests may be constitutionally accomplished only through increased communication and education. Quoting Mr. Justice Brandéis, the court stated, " '[I]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the process of education, the remedy to be applied is more speech, not enforced silence. Only an emergency can justify repression.’ ” (431 US 85, 97, supra.)
In holding Willingboro’s ordinance to be unconstitutional, the court withheld comment on whether the en masse exodus of white residents and rapid resegregation of formerly white neighborhoods factually established by the record in Barrick (Barrick Realty v City of Gary, Ind., 491 F2d 161, supra) would constitute such an emergency as was referred to by Mr. Justice Brandéis. The court specifically expressed no view as to the present validity of the Barrick decision (Linmark Assoc. v Willingboro, 431 US 85, 95, n. 9, supra). Even assuming the continued validity of that holding, however, the instant motion must be granted as the defendant city has offered absolutely no factual support of its conclusory allegations concerning "blockbusting”, "panic selling” and other evidentiary criteria upon which the Barrick decision and the city’s position herein are founded. Opposition to an appropriately supported motion for summary judgment must be similarly sup *565 ported by factual allegations tending to show the existence of some material, triable issue of fact (4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.05c). The defendants have offered no such proof herein and I find their remaining defenses to be without merit. The plaintiffs’ motion for summary judgment is therefore granted.