E. W. DAUGHERTY, Jr. and Robert L. Daniell, Plaintiffs,

v.

CITY OF EAST POINT, Defendant.

Civ. A. No. C77–1953A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 7, 1978.

Michael A. Kessler, Bates, Baum & Landey, Atlanta, Ga., for plaintiffs.

Henry Sparrow, George N. Sparrow, Jr. and E. Wayne Wallhausen, East Point, Ga., for defendant.

## STATEMENT OF THE CASE

HAROLD L. MURPHY, District Judge.

Plaintiff, E. W. Daugherty, Jr., is a real estate broker licensed by the State of Georgia, doing business in the East Point area. The plaintiff, Robert L. Daniell, is a homeowner and resident of East Point, Georgia. The City of East Point, defendant in this action, is a municipality existing under the laws of the State of Georgia.

Plaintiffs bring this action seeking an injunction to restrain the enforcement of an ordinance and a declaratory judgment as to the constitutionality of an ordinance. The ordinance under attack prohibits "For Sale" signs desired to be erected by plaintiffs upon the residential lot of plaintiff Daniell which plaintiffs desire to advertise for sale.

Evidence was heard and the case is before the Court on the prayer for a preliminary injunction.

## FINDINGS OF FACT

From the evidence the Court finds the following facts:

The plaintiff Everett W. Daugherty, Jr., is a resident of East Point, Georgia and is self-employed as a real estate broker, having been engaged in business as a real estate agent and broker for approximately fourteen years.

The plaintiff, Robert L. Daniell, is a resident of East Point, Georgia and owns a home in East Point which he desires to sell because he is moving to Alaska.

Plaintiff Daugherty is not formally associated with other brokers, does not belong to any multiple listing groups and does most of his advertising of various properties for sale by newspaper, word of mouth, direct mail and with "For Sale" signs except in certain areas of East Point where "For Sale" signs are prohibited.

On one occasion in the fall of 1977 Daugherty was fined in the Municipal Court of East Point for violating the ordinance prohibiting such signs, which case is now on appeal to the Superior Court of Fulton County, Georgia.

Plaintiff Daniell desires the right to put a sign in his front yard advertising his house for sale.

The sign plaintiffs desire to erect is a standard "For Sale" sign of modest size, yellow in color with red print showing the property for sale with the name and telephone number of the agent being listed on the sign.

The city of East Point is generally racially integrated having become so in the past five years.

The ordinance in question was enacted in 1972 at a time when the neighboring areas of Cascade Heights and Campbellton were in rapid racial transition with the neighborhoods containing a sea of "For Sale" signs which distorted the law of supply and demand, severely lowering market values in those areas.

As a result of expressions of alarm as to the future of East Point the present sign ordinance was enacted in an effort to maintain stability in the neighborhood with a desire to prevent white flight being one of the motivating factors behind enactment.

At the time of enactment of the ordinance East Point was essentially an all white community and has now become integrated with a 23% black population with this having been accomplished by orderly transition.

Witnesses credit the sign ordinance with the transition of East Point from an all white neighborhood to integrated housing without mass selling. They fear that the allowing of signs as sought by plaintiffs will cause the situation as to alarm and anxiety on integration and lowering of property values to revert to that of 1972.

On or about May 15, 1972 the City of East Point, Georgia adopted the zoning ordinance applicable to its premium single family residential areas R–0, R–1, and R–2, which is now before the Court. This ordinance prohibits, within the specified zoning classifications, placement of all signs, the ordinance being as follows:

BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF EAST POINT:

SECTION 1. Subparagraph (H) of Section 24–62 is hereby amended by striking said subparagraph (H) in its entirety and inserting in lieu thereof a new subparagraph (H) which shall read as follows:

"Subparagraph (H): *Signs.* All signs are specifically prohibited except customary signs in conjunction with residential usage such as mailbox signs, names of residences and house numbers; traffic or other public safety signs and railroad crossing signs; seasonal or holiday decorations; identification sign or insignia of any government or government agency or any civic, charitable, religious, patriotic, fraternal or similar organization; display signs used in connection with civic, non-commercial, health, safety and welfare campaigns provided that all such signs shall be removed within fifteen (15) days following the conclusion of the campaign."

SECTION 2. Subparagraph (I) of Section 24–69 is hereby amended by striking said subparagraph (I) in its entirety and inserting in lieu thereof a new subparagraph (I) which shall read as follows:

"Subparagraph (I). *Signs.* All signs are specifically prohibited except customary signs in conjunction with residential usage such as mailbox signs, names of residences and house numbers; traffic or other public safety signs and railroad crossing signs; seasonal or holiday decorations; identification sign or insignia of any government or government agency or any civic, charitable, religious, patriotic, fraternal or similar organization; display signs used in connection with civic non-commercial, health, safety and welfare campaigns provided that all such signs shall be removed within fifteen (15) days following the conclusion of the campaign."

SECTION 3. All ordinances and parts of ordinances in conflict herewith are hereby repealed.

The ordinance was adopted in the interest of the public welfare of the property owners and citizens of the City of East Point, Georgia, for the purpose of protecting and maintaining the value of property and in limiting its use and improving the aesthetic values and appearances of the residential neighborhoods; to stabilize and preserve the use and value of properties within the

specified zoning districts; and to benefit all of its citizens and property owners and the general welfare of the community by accomplishment of these purposes.

East Point is a "bedroom" community located in the southwesterly boundaries of the City of Atlanta, Georgia. East Point is bounded on the North by the City of Atlanta, on the West by unincorporated Fulton County, to the South by the City of College Park, Georgia and to the East by the City of Atlanta and City of Hapeville, Georgia. Prior to the adoption of the ordinance in 1972, the southwest area of the City of Atlanta had undergone radical racial transition from an area of a predominately white composition through resegregation into a segregated black residential neighborhood.

The evidence submitted based upon the best available census tract information compiled and prepared by the Atlanta Regional Commission shows that various census tracts surrounding East Point variously went through transition from as high as ninety-nine (99%) percent white composition and one (1%) percent black composition to a virtual reversal of these figures to ninety-nine (99%) percent black composition and one (1%) percent white.

The community and the citizens of East Point had witnessed and many had experienced first hand, the transition and resegregation that took place in the areas immediately adjoining East Point. There was considerable apprehension, fear and panic. existing within the residential community of East Point and, in fact, a great deal of "white flight" beginning to take place in residential areas of East Point. The evidence further established that since 1970 East Point has experienced an increase of approximately three hundred (300%) percent in the black composition of the City of East Point and that it is now, and under the existence of this ordinance, is maintaining itself as a stabilized integrated residential community.

The evidence further established that since the adoption of the ordinance the community has stabilized as a well balanced racially integrated community to the point there is, in fact, confidence in both the white and black residents of East Point in the present stability of the community as an integrated neighborhood with members of both races viewing and purchasing residential housing.

The evidence further established that the property owners of the City believe the ordinance to have been effective in stabilizing the community and its property values. Repeal might cause loss of faith in the stability of the community and a return to the panic situation that existed at the time of adoption of the ordinance.

There are other alternative methods of advertising and publishing and marketing tools available to property owners of East Point for sale of their property without the necessity of the use of signs on their property. The evidence supported plaintiff's contention that these alternative methods are not as effective as the posting of signs. In addition, plaintiff, Daugherty showed that it would be prohibitively expensive for him to join a multiple listing computer or catalogue group. All alternatives left open to the plaintiff involve more cost and may be less effective media for communicating the desired message.

There is no bad faith existing on behalf of the defendant in its application and enforcement of the ordinance and such enforcement and application is generally uniformly and consistently applied. Signs are permitted in all other zoning classification areas of the City including signs directing potential purchasers into residential areas in which houses are for sale.

## CONCLUSIONS OF LAW

Plaintiff alleges jurisdiction under 28 U.S.C. § 1331, contending that the action arises under the First Amendment of the Constitution of the United States. Plaintiffs argue that their First Amendment right of freedom of speech is being abridged by the City of East Point's prohibition on signs in certain residential neighborhoods. There is no question that plaintiffs' First Amendment rights are in ques-

tion here. Plaintiff, Robert L. Daniell, has been prohibited from erecting a "For Sale" sign on property located in East Point, Georgia, which he wishes to sell. Plaintiff, E. W. Daugherty, Jr., the real estate agent of Mr. Daniell, has been cited, tried, and convicted of violating the ordinance in question.

■ The defendant has moved to dismiss this action since plaintiff Daugherty's appeal from his conviction is presently pending before the Superior Court of Fulton County. Citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the defendant argues that it is improper for a Federal Court to grant an injunction as to the validity of a statute when prosecution involving such statute is pending in state court. This policy of restraint is founded upon the equitable doctrine that a court of equity should not act when the moving party has an adequate remedy at law. *Younger,* 401 U.S. at 43–44, 91 S.Ct. 746. However, the Court in *Younger* denominated specific circumstances which would override the traditional equitable policy. The Court stated that where the state law to be applied is "flagrantly and patently violative of express constitutional prohibition," the federal court may intervene. *Younger* at 53–54, 91 S.Ct. 746, *accord, Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). As will be developed later in the opinion, there is no question that the City of East Point's ordinance infringes on the right of freedom of speech guaranteed under the First Amendment. The motion for a preliminary injunction is correctly before the Court. Defendant's motion to dismiss is denied.

In order to understand the present state of the law regarding "commercial speech" a brief synopsis of the Supreme Court's decisions on this question will be helpful. In 1942, the Supreme Court, without citation, found that "commercial speech" was not granted the same high degree of protection afforded by the First Amendment to other varieties of speech. *Valentine v. Chresten-*

*sen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). "Commercial speech" was defined as speech which does nothing more than propose a commercial transaction. *id.* at 54, 62 S.Ct. 920. The *Chrestensen* rule has suffered extensive criticism since its inception. See *Lehman v. City of Shaker Heights,* 418 U.S. 298, 314, 94 S.Ct. 2714, 41 L.Ed.2d 770 (Brennan, J., joined by Stewart, Marshall, and Powell, JJ., dissenting). Two recent decisions of the Supreme Court appear to have extinguished the "commercial speech" exception.

*Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), dealt with a Virginia statute prohibiting the circulation of any publication to encourage or promote the procurement of an abortion. The defendant newspaper editor had published an advertisement for an abortion referral agency in New York. In reversing his conviction, the Supreme Court held that the ad came within the protection of the First Amendment since it, "did more than simply propose a commercial transaction. It contained factual material of clear 'public interest.' " *Bigelow* at 822, 95 S.Ct. at 2232. Thus, the *Bigelow* decision called for the courts to make a content analysis of advertisements to see if it related to the "public interest".

In *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1975), the Supreme Court put an end to the "commercial speech" exception to the First Amendment. That case concerned a Virginia statute which made it unprofessional conduct for a pharmacist licensed in Virginia to advertise any price for prescription drugs. The Court balanced the interests involved in speech which is solely commercial in content. The Court found that the interest of the state in maintaining a high degree of professionalism in its pharmacists, did not outweigh the interest of the public in receiving information. More important the State interest could not negate the protections afforded speech, even commercial in content, by the First Amendment. Although the Court continued to hold that regulating commer-

cial speech for truthfulness and legitimacy was valid, the *Chrestensen* rule was dead.

■ Before confronting the balancing of interests, required by the case at bar, the Court feels that it must deal with defendant's contention that the East Point ordinance controls only the time, manner, and place of speech. There is no question that reasonable time, place, and manner regulations may be necessary to further significant governmental interests and are permitted. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1971). "The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *id.* at 116, 92 S.Ct. at 2303. Such regulations have been upheld to stop a speaker from invading the privacy of a home, *Rowan v. Post Office Department,* 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); or to stop a demonstration on a large street during rush hour, *Cox v. Louisiana,* 379 U.S. 536, 554, 85 S.Ct. 453, 13 L.Ed.2d 471 (1964); or if the receiver's degree of captivity made it impractical to avoid exposure, *Lehman v. City of Shaker Heights,* supra. The circumstances presented in the present action do not warrant such regulation. A "For Sale" sign on the lawn of a person's home is not incompatible with its normal usage, nor is it impractical to avoid exposure to the sign. A "For Sale" sign is not likely to put an intolerable burden on traffic. Certainly such a sign could not be considered an invasion of a neighbor's privacy. The contention that the ordinance in question is a valid regulation of time, place and manner of speech cannot be supported under the facts presently before the Court.

In balancing the interests at stake here this Court must be guided by the recent decision of the Supreme Court in *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). In that case a property owner and real estate agent sought declaratory and injunctive relief from a town ordinance prohibiting the posting of "For Sale" and "Sold" signs on certain residential property. In finding the ordinance unconstitutional, the Court held that the ordinance was not genuinely concerned with place or manner of speech, but proscribed signs based on content. Moreover, the Court held that even an important governmental objective, such as promoting stable integrated housing, could not be achieved by restricting the free flow of truthful commercial information. Such conduct is prohibited by the First Amendment.

Although there are differences in the circumstances presented here and those in *Linmark,* the Court finds these distinctions do not affect the balance of interests. The ordinance presently before the Court does not specifically prohibit "For Sale" and "Sold" signs. Rather it prohibits the posting of all signs with certain narrow exceptions. This broad prohibition violates the tenets of the First Amendment on more levels than that considered in *Linmark.* However, that question is not presently before the Court. Plaintiff would like to post a "For Sale" sign. It is the ordinance's prohibition on commercial speech which concerns the Court, and the broader application of the East Point ordinance does not lessen the applicability of the *Linmark* rationale.

The second and more relevant distinction concerns the effectiveness of the ordinance. The Supreme Court in *Linmark,* had little evidence to show that the ordinance actually promoted stable, integrated housing. The City of East Point's ordinance was passed in 1972 and its effect may be studied from a more timely perspective. The evidence presented by the City of East Point supports their conclusion that it is the sign ordinance which enabled the city to develop a stable, integrated housing pattern. East Point moved from an almost totally white community in 1970 to one in which 23% of its population was non-white in 1977. East Point was able to avoid the "white flight" which apparently affected neighboring communities. There is no doubt that Congress has made a strong national commitment to promote integrated housing. *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

The fact that this ordinance was enacted and perhaps achieved an important govern-

mental objective does not exempt East Point from the restraints of the First Amendment. The Court realizes the importance of the national policy promoting racial integration. This does not allow the Court to disregard the rights guaranteed under the First Amendment, rights more compelling than any national policy.

■ Information pertaining to property sales is of vital interest to East Point's residents, especially as it applies to deciding where to live and raise a family. The facts indicate that no alternative form of communication, open to the plaintiffs, is as effective as the posting of a "For Sale" sign on the affected property. The suppression of this information through a sign ordinance is not an alternative available to the City of East Point. "It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us." *Virginia Pharmacy Board v. Virginia Consumer Council,* supra, 425 U.S. at 770, 96 S.Ct. at 1829. We must conclude that this ordinance violates the First Amendment.

Accordingly, the defendant is enjoined from prohibiting the posting of "For Sale" signs under this ordinance. Defendant's motion to dismiss is Denied.