## MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. v. JAMES CROCKETT ET UX.

[No. 1139, September Term, 1979.]

*Decided June 12, 1980.*

The cause was argued before THOMPSON, LOWE and MACDANIEL, JJ.

*C. Laurence Jenkins, Jr., Assistant City Solicitor,* and *Michael A. Pretl, Special Deputy City Solicitor of Smith, Somerville & Case,* with whom were *Benjamin L. Brown, City Solicitor,* and *Richard M. Hartman, Chief City Solicitor* on the brief, for appellants.

*Henry M. Decker, Jr.,* with whom were *David K. Hayes* and *A. Dwight Pettit* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

On July 19, 1974, the Mayor of Baltimore approved Ordinance No. 701 which amended the City's Comprehensive Rezoning Ordinance which had been passed and approved in 1971. The effect of the amendment was to prohibit sale or lease signs on individual residences in those parts of Baltimore which had been zoned "Residence and Office-Residence Districts." The Comprehensive Zoning Ordinance had, prior to the amendment, permitted such signs. Curiously, the amendment permitted such signs within those districts on multiple-family dwellings, apartment hotels, and non-residential buildings.[1]

James and Mary Crockett, appellees, owners of a residence at 1929 McCulloch Street, which is in a residential zone, posted a "For Sale" sign on the property. A violation notice was issued by the City and when the sign was not removed the appellants, the Mayor and City Council of Baltimore and James J. Dembeck, Zoning Administrator, (both together are hereinafter called the "City" and considered as one body) filed a bill of complaint in the Circuit Court of Baltimore City seeking an injunction. The Crocketts filed an answer admitting all of the material allegations in the bill but asserting that the zoning ordinance was unconstitutional. The Crocketts thereafter

---

1. The amendments to Section 10.0-2b1 of the Zoning Ordinance are shown by the following excerpt from Ordinance No. 701, brackets indicating matters stricken from the prior law and italics indicating new matter added to the prior law:

"b. The following types of signs, subject to the limitations prescribed for them, shall be permitted for uses authorized as principal or conditional uses in Residence and Office-Residence Districts:

"1. One non-illuminated sale or lease sign for [each street frontage of the lot, not exceeding a height of five feet, and having an area not exceeding six square feet. For] multiple family dwellings, apartment hotels, and non-residential buildings. *Such* [such] sign shall not exceed a height of eight feet if free standing, and *shall* not *extend* above the roof line if attached to a building and *shall* not exceed an area of 36 square feet."

filed a motion for summary judgment and the City answered claiming that there was a dispute between the parties as to material facts.

A hearing was held before a master on March 27, 1979, at which time an affidavit of the Zoning Commissioner, James J. Dembeck, was filed, which included the following:

"In the 1971 version of the comprehensive rezoning ordinance, it was determined that 'For Sale' signs would be permitted, with a limitation as to number and size. However, following passage of Ordinance No. 1051, [the Comprehensive Rezoning Ordinance], it was determined that 'For Sale' signs should also be included in the Zoning prohibition, since many realtors were permitting their signs to remain on properties long after they had been sold, and in some instances, included 'Sold' labels on the signs; thus, instead of accomplishing what the original ordinance had sought — that is the sale of residential homes — it was learned that, in addition, such signs were also being used as a form of commercial advertising, and inasmuch as it had been the Commission's determination that commercial advertising was not to be permitted in residential neighborhoods, the Zoning Ordinance was amended to prohibit 'For Sale' signs." [2]

At the same time a stipulation by the parties was filed including a copy of the Baltimore City Council file pertaining to Ordinance No. 701, as approved on July 19, 1974. The file contained no testimony but several letters from community groups generally expressing the idea that "For Sale" signs in neighborhoods undergoing racial transition could create panic selling. There were several letters from real estate interests, expressing the view that it was improper to deprive homeowners of the means by which a substantial portion of home properties are sold.

---

2. It appears that the Zoning Commissioner may have been shaping his statement to avoid the direct holding of Linmark Associates, Inc. v. Township of Willingboro, 431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977).

Perhaps it is significant that in the City's memorandum before the master, there was no argument that the ordinance was passed in order to remedy a panic selling situation. The master recommended that the bill be dismissed on the basis of *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S. Ct. 1614, 52 L. Ed. 2d 155 (1977). At the hearing before the chancellor (Mary Arabian, J.), the City persisted in its position but *amici curiae,* Northeast, Incorporated and Harbel, Incorporated, argued that the ordinance was enacted in order to remedy a "panic selling" situation which existed in Baltimore. There was nothing in the City Council file that would support a finding that "panic selling" or "block busting" was then in progress in Baltimore City. After appropriate hearing, the chancellor adopted the report of the master and granted the motion for summary judgment. In her oral opinion, she stated in part as follows:

"The City contends that the Master was in error and that there is a genuine dispute of material facts in the case. Its principal claim is that the Supreme Court case of *Linmark Associates, Inc. 'vs' Willingboro,* 431 U.S. 85 (1977), is not applicable to the instant case because Ordinance No. 701 (1974) is part of Baltimore City's comprehensive zoning law, Ordinance No. 1951 (Chapter 10.0-2b(1) (1971) thereof having been amended) distinguishable from the Willingboro Ordinance, and as such regulates the time, place or manner of speech. *Linmark* stated that regulations of said nature 'stand on a different footing from laws prohibiting speech altogether' and if satisfactory alternatives of communication are available, may withstand First Amendment attack. To support its position, the City proffers that it would present at a trial on the merits the history, purpose and effect of the Ordinance through members of the City Council and representatives of the Real Estate Commission. However, all of those facts were before the Master, by way of stipulation, and the Court has carefully reviewed them. Interestingly, the Planning

Commission abstained from making a recommendation and the Zoning Board gave an unfavorable report to the City Council. The only distinction between the Willingboro Ordinance (a copy of which was supplied to the Court by the City and which was also a part of its zoning law) and Ordinance No. 701 is that the former directly prohibits 'For Sale' signs while the latter does the same, in the words of the Master, 'by negative implication.' When Ordinance No. 701 was enacted no new purpose for the law was enunciated. Rather, it is urged, the Ordinance merely terminated a previous exception. The Court finds, as the Master infers, that Ordinance No. 701, in and of itself, as it applies to the prohibition of the display of 'For Sale' signs in residential and office residential districts is not 'genuinely concerned' with a regulation of time, place or manner of speech. Having so concluded, it is not necessary to consider alternative methods of communication but *Linmark* clearly addresses the inadequacy of the alternative methods of communication suggested by counsel in this matter. The Court concludes there is no genuine dispute of the material facts."

In *Linmark,* the Supreme Court phrased the question to be decided as follows:

"[W]hether the First Amendment permits a municipality to prohibit the posting of 'For Sale' or 'Sold' signs when the municipality acts to stem what it perceives as the flight of white homeowners from a racially integrated community." 97 S. Ct. at 1615.

In evaluating the record, the Supreme Court held that the ordinance violated the First Amendment. The Court stated:

"The record here demonstrates that respondents failed to establish that this ordinance is needed to assure that Willingboro remains an integrated

community.[9] As the District Court concluded, the evidence does not support the Council's apparent fears that Willingboro was experiencing a substantial incidence of panic selling by white homeowners."

The Court's footnote is as follows:

"[9] As the District Court itself observed, its finding concerning the lack of panic selling distinguishes this case from Barrick Realty, Inc. v. City of Gary, 491 F.2d 161 (CA7 1974), in which Gary, Indiana's prohibition on 'For Sale' signs was upheld on a record indicating that such signs were causing 'whites to move en masse and blacks to replace them.' *Id.*, at 163-164. We express no view as to whether Barrick Realty can survive Bigelow and Virginia Pharmacy Bd." 97 S.Ct. at 1619-20.

This footnote indicates that if an emergency panic selling situation existed as in *Barrick,* a "For Sale" sign ban might be constitutional. The Court in *Linmark,* continued:

"The constitutional defect in this ordinance, however, is far more basic. The Township Council here, like the Virginia Assembly in Virginia Pharmacy Bd. [v. Virginia Citizens Consumer Council, 425 U.S. 748, 96 S.Ct. 1817, 48 L. Ed. 2d 346 (1976)] acted to prevent its residents from obtaining certain information. That information, which pertains to sales activity in Willingboro, is of vital interest to Willingboro residents, since it may bear on one of the most important decisions they have a right to make: where to live and raise their families. The Council has sought to restrict the free flow of these data because it fears that otherwise homeowners will make decisions inimical to what the Council views as the homeowners' self-interest and the corporate interest of the township: they will choose to leave town. The Council's concern then, was not with any commercial aspect of 'For Sale'

signs — with offerors communicating offers to offerees — but with the substance of the information communicated to Willingboro citizens. If dissemination of this information can be restricted, then every locality in the country can suppress any facts that reflect poorly on the locality, so long as a plausible claim can be made that disclosure would cause the recipients of the information to act 'irrationally.' *Virginia Pharmacy Bd.* denies government such sweeping powers. As we said there in rejecting Virginia's claim that the only way it could enable its citizens to find their self-interest was to deny them information that is neither false nor misleading:

> 'There is ... an alternative to this highly paternalistic approach. That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well enough informed, and that the best means to that end is to open the channels of communication rather than to close them ... But the choice among these alternative approaches is not ours to make or the Virginia General Assembly's. It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us.' 425 U.S., at 770, 96 S.Ct., at 1829.

Or as Mr. Justice Brandeis put it: 'If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence. Only an emergency can justify repression.' *Whitney v. California,* 274 U.S. 357, 377, 47 S. Ct. 641, 649, 71 L. Ed. 1095 (1927) (concurring opinion).

Since we can find no meaningful distinction

between Ordinance 5-1974 and the statute overturned in *Virginia Pharmacy Bd.,* we must conclude that this ordinance violates the First Amendment." 97 S. Ct. at 1620-21.

The City argues here that its Ordinance is dissimilar to the Willingboro Ordinance because the Baltimore Ordinance is a part of a Comprehensive Zoning Plan, and that freedom of speech is not absolute but is subject "to reasonable limitations related to time, place and manner or mode of expression of the speech." The argument is not persuasive. The dissenting opinion in *Linmark Associates, Inc. v. Township of Willingboro,* 535 F.2d 786, 805-06 (3d Cir. 1976), which is the same case that was later before the Supreme Court, shows that the amendment to the Willingboro Comprehensive Ordinance was also a zoning amendment, and it appears very similar to the Baltimore amendment which is before us. Indeed, the failure of the Supreme Court to even mention this circumstance would indicate that the City's argument is without substantial basis. The Court did say "the Willingboro ordinance is not genuinely concerned with the place of the speech — front lawns — or the manner of the speech — signs. The township has not prohibited all lawn signs — or all lawn signs of a particular size or shape — in order to promote aesthetic values or any other value 'unrelated to the suppression of free expression.' " 431 U.S. at 93, 97 S. Ct. at 1619. The same can be said about the ordinance in question. The City further argues that in all first amendment litigation there must be a balancing of interests. Whatever merit this argument might have in another case, it has none here because we entirely agree with the chancellor that there is no substantial difference between the Willingboro Ordinance and the Baltimore Ordinance and no substantial difference in the considerations leading to its adoption despite the attempt of the Zoning Commissioner to ignore the real basis that motivated the Council to pass the ordinance and that motivated the citizens groups to support such an ordinance.

The City's primary stress in its brief and in its oral

690

argument here is that there was a genuine dispute as to facts and the chancellor should not have proceeded by summary judgment. Appellant argues that the record discloses a genuine dispute of material facts as to whether or not the for sale sign ban is necessary to enhance stabilization of integrated neighborhoods. This argument, too, must be from desperation. We note that in its pleadings and in its arguments to the court below the City avoided making this argument which, if based on the facts, might have brought the case within the holding of *Barrick Realty, Inc. v. City of Gary*, 491 F.2d 161, 163 (7th Cir. 1974), which upheld a ban on such signs on a record showing that the signs were causing "whites to move en masse and blacks to replace them." We think it avoided the argument because there was nothing in the stipulated record to support it and we note particularly the trial judge's finding.

> "An additional issue is raised by *Amicus Curiae*. The present case, he claims, may fall within the possible *Barrick Realty, Inc. -vs- City of Gary*, 291 F.2d 161 exception to the *Linmark* holding in that if an emergency situation exists as a result of *en masse* panic selling, emergency legislation to meet the crisis may also withstand First Amendment attack. It must be stressed that the City has not embraced that argument, the City Council did not declare such acute circumstances as reasons for its legislation and the documents of the history of Ordinance 701, as presented to the Court, do not justify a belief that such an emergency existed.
> * * *
> "The Court wishes to take the opportunity to say that from its observations, the citizens of Baltimore generally are proud of their City and it is highly unlikely that they will become victims of unethical panic peddling and resort to panic selling."

The City failed to allege in its pleadings the only triable issue of fact which could possibly have permitted the ordinance to be sustained under *Linmark;* we affirm the

chancellor's grant of the motion for a summary decree. Our position is supported by *Harris v. City of Buffalo,* 90 Misc. 2d 561, 394 N.Y.S.2d 794 (1977). In that case Harris, et al. sought to have a city ordinance which banned "For Sale" signs declared unconstitutional and the Court granted their motion for summary judgment stating:

> "Even assuming the continued validity of that holding, [*Barrick*] however, the instant motion must be granted as the defendant City has offered absolutely no factual support of its conclusory allegations concerning 'block-busting', 'panic selling' and other evidentiary criteria upon which the *Barrick* decision and the City's position herein are founded."

*Decree affirmed.*
*Appellants to pay the costs.*