THE CITY OF CHICAGO, Plaintiff-Appellant, *v.* LOUIS PRUS *et al.*,
Defendants-Appellees.

First District (5th Division)    No. 80-2043

Opinion filed May 22, 1981.—Supplemental opinion filed on denial of rehearing
September 11, 1981.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke, Philip L. Bronstein, and Myron N. Schreiber, Assistant Corporation Counsel, of counsel), for appellant.

John W. Lally, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

The sole issue presented in this appeal is whether the trial court, in granting defendants' motion to dismiss, erred in finding a municipal ordinance unconstitutional.

It appears that plaintiff city of Chicago enacted a for-sale sign ban ordinance (ordinance) prohibiting any person from placing or maintaining "For Sale" or "Sold" signs in designated residential areas of the city. Plaintiff thereafter filed seven two-count quasi-criminal complaints against defendants, charging them with violation of the ordinance.[1] Defendants moved to strike and dismiss both counts on the grounds that the ordinance was unconstitutional and filed supporting memoranda. Plaintiff filed a memorandum in opposition and, after a hearing at which plaintiff argued that factual issues were presented which necessitated an evidentiary hearing, the court granted the motion to dismiss based on defendants' argument that the case of *Linmark Associates, Inc. v. Town-*

---

[1] The complaints were amended to add a third count charging defendants with violation of an ordinance prohibiting the solicitation of residential real estate sales based on representations that the real estate would decrease in value due to the entry into the community of persons of a particular race, color, sex, marital status, religion, national origin or ancestry. That complaint was dismissed for want of prosecution, and that order is not contested on appeal.

*ship of Willingboro* (1977), 431 U.S. 85, 52 L. Ed. 2d 155, 97 S. Ct. 1614, declares all for-sale sign ban ordinances to be unconstitutional.

Opinion

Plaintiff essentially contends that the constitutionality of the ordinance could not properly be determined on a motion to dismiss. In support thereof, it argues that *Linmark* does not categorically preclude such ordinances; that only through an evidentiary hearing could it prove that Chicago neighborhoods suffer from instability as a result of rapid racial change; and that the ordinance is necessary to control the unscrupulous practices of panic selling and block busting and thereby promotes stable, racially integrated neighborhoods.

To implement its policy of assuring to all Chicago residents an opportunity to obtain adequate housing on an equal and nondiscriminatory basis, plaintiff enacted the ordinance in question, which provides in relevant part:

"In order to effectuate this policy and to eliminate as far as legislatively permissible, all forms of discrimination and segregation in the field of housing, it shall be an unfair housing practice and unlawful for any owner, lessee, sub-lessee, assignee, managing agent, or other person, firm or corporation having the right to sell, rent, lease or sublease any housing accomodation, within the City of Chicago, or any agent of any of these, or any real estate broker licensed as such by the City of Chicago.
⁂

H. To construct, place, maintain or install a 'For Sale' sign or 'Sold' sign of any shape, size or form on premises located in Residential Districts, zoned R1 through R8 under Chapter 194A of this Code." Municipal Code of Chicago, Ill., ch. 198.7b, par. 4(h) (1973).

It is well established that a cause of action will not be dismissed on the pleadings unless it is clear that no set of facts can be proved which would entitle plaintiff to relief. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575.) Such motion, made pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45), is an attack only on the legal sufficiency of the complaint (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91), and, in its determination, all well-pleaded facts in the complaint as well as all reasonable inferences therefrom must be taken as true. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.* (1974), 57 Ill. 2d 298, 312 N.E.2d 259; *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 45 N.E.2d 20; *Paschen v. Village of Winnetka* (1979), 73 Ill. App. 3d 1023, 392 N.E.2d 306; *Kenneke v. First National Bank* (1978), 65 Ill. App. 3d 10,

382 N.E.2d 309; *Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.

In *Linmark*, the United States Supreme Court struck down a municipal ordinance prohibiting the posting of real estate "For Sale" or "Sold" signs as an impermissible infringement upon the first amendment right to freedom of speech. The ordinance was designed to stem what the township of Willingboro perceived as the fear of rapid racial turnover and the flight of white homeowners from a racially integrated community. Rejecting the argument that the ordinance sought to regulate only the commercial aspects of posting such signs, the court reasoned that in light of the erosion of the "commercial speech" exception to the first amendment (see *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.* (1976), 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817; *Bigelow v. Virginia* (1975), 421 U.S. 809, 44 L. Ed. 2d 600, 95 S. Ct. 2222), Willingboro not only failed to demonstrate a compelling need for the ordinance, unattainable in any other manner, as a means to maintain a racially integrated community but also attempted through the ordinance to control the content of certain information conveyed to its citizens. The ordinance also suffered from the infirmity of seeking to achieve its purpose by restricting the flow of truthful information which affected the right of its citizens to choose where to live and raise their families.

Our reading of *Linmark* suggests, in addition, that in reaching its conclusion the court balanced the asserted governmental interest against the intrusion upon the petitioner's first amendment rights. While it appears that *Linmark* forbids the paternalistic rationale of withholding information from the public in a manner thought to be consistent with the public's best interests, we believe that the supreme court did not preclude all for-sale sign ban ordinances as a matter of law, but rather than the governmental interest in the regulation of commercial speech must be balanced against the first amendment interests involved. In this regard, it is significant that the court declined to say whether a similar ordinance upheld in *Barrick Realty, Inc. v. City of Gary* (7th Cir. 1974), 491 F.2d 161, would withstand first amendment analysis under *Virginia State Board of Pharmacy* and *Bigelow*, and it agreed with the trial court that the lack of panic selling in *Linmark* distinguished it from *Barrick*. (431 U.S. 85, 95 n.9, 52 L. Ed. 2d 155, 163 n.9, 97 S. Ct. 1614, 1619-20, n.9.) The record in *Barrick* disclosed that the ordinance was aimed at panic selling with the objective of ending resegregation. There was evidence that the posting of "For Sale" signs in some white neighborhoods caused the mass exodus of whites and the influx of blacks to replace them and that some real estate dealers who put up the signs exacerbated the resegregation problem by unlawfully urging whites to sell quickly before they had black neighbors and lower property values. It is also noteworthy that an

evidentiary hearing took place in a case in which a for-sale sign ban ordinance was held unconstitutional under *Linmark*. (See *Daugherty v. City of East Point* (N.D. Ga. 1978), 447 F. Supp. 290.) We believe that *Linmark* and its progeny require a governmental body to show that the purported harm caused by the posting of "For Sale" signs could not be avoided by any means other than an ordinance banning them, but that requirement—assuming as it does constitutional dimensions—necessitates an evidentiary hearing. See L. Tribe, American Constitutional Law 603, 654-55 (1978).

In the present case, the complaints allege that defendants caused a "For Sale" sign to be installed on residential property within a zone protected by the challenged ordinance and that defendants failed to remove the sign after notification of the violation. At the hearing on the motion to dismiss, plaintiff made an offer of proof, stating in substance that Chicago suffers from instability as a result of rapid racial change in its neighborhoods; that such transition is caused in part by tactics such as panic selling, block busting and panic peddling; that "For Sale" signs are a further cause of the turnover; and that the ordinance helps promote the continued viability of stable, racially integrated neighborhoods. By granting the motion to dismiss, the trial court in effect concluded that no set of facts could be proved which would justify the ordinance. In our view, however, the court in *Linmark* by requiring a balancing of interests, left open the possibility that a set of facts could be proved which would sustain the ordinance. Therefore, taking the allegations and the offer of proof as true, we cannot say that in light of *Linmark* plaintiff would be unable to justify the ordinance irrespective of any emergency that may confront its neighborhoods.

Accordingly, the order of the trial court is reversed, and the case is remanded for further proceedings consistent with the content of this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In his petition for rehearing, defendant raises matter which requires consideration in view of the fact that our opinion may have been, as indicated by defendant, the first to construe *Linmark* as requiring the balancing of the government's interest in imposing a "For Sale" sign ban

ordinance against a person's first amendment right to engage in commercial speech.

Initially, we note that our opinion should not, as suggested by defendant, be read as saying that the challenged ordinance survives first amendment scrutiny, as we held only that an evidentiary hearing is necessary to determine that question. We were not prepared to say that there is no situation in which the urgency of restoring and maintaining the peaceable character of the city's neighborhoods could outweigh the first amendment rights of realtors or the economic interest of home buyers or sellers. Our belief that *Linmark* does not foreclose the opportunity for such an evidentiary hearing is reinforced by the supreme court's treatment of *Barrick* in footnote 9 of *Linmark* where, in stating that it expressed no view as to whether the facts in *Barrick* could withstand first amendment analysis, the court implies the possibility that a ban ordinance could be upheld in the proper case. Moreover, a ruling on a motion to dismiss was not involved in either of the two cases cited by defendant in its petition for rehearing as being in opposition to our balancing of interests concept and, in fact, each was decided after a factual presentation. In *Daugherty v. City of East Point* (N.D. Ga. 1978), 447 F. Supp. 290, the City was enjoined from enforcing its sign ban ordinance, but only after a full evidentiary hearing. In *Mayor of Baltimore v. Crockett* (1979), 45 Md. App. 682, 415 A.2d 606, *cert. denied* (1981), ___ U.S. ___, 67 L. Ed. 2d 616, ___ S. Ct. ___, the holding of the unconstitutionality of a sign-ban ordinance was made in a ruling on a motion for summary judgment after the court had been apprised of all the underlying facts.

Defendant also suggests in his petition that in remanding we should make "a specific statement of the parameters permissible in the City's anticipated proof." It is noteworthy, however, that *Linmark* does not set forth guidelines as to the proof necessary to establish the governmental interest. It appears to us that *Linmark* avoided doing so in recognition of the need to make that determination on a case-to-case basis. Moreover, by its treatment of *Barrick*, *Linmark* suggests in broad outline that only an emergency situation threatening a sudden and perhaps wrenching change in a neighborhood could justify derogation from protected commercial speech by means of a ban ordinance. The nature of such emergencies would necessarily vary from one community to another and be influenced by many unforseen factors. Consequently, it would be presumptuous for us to attempt a full assessment of the situation, based on the scant record before us, and it would be equally inappropriate to impose rigid guidelines.

For the reasons stated, the petition for rehearing is denied.

MEJDA and WILSON, JJ., concur.