THE CITY OF CHICAGO, Plaintiff-Appellant, v. DONNA GORDON *et al.,*
Defendants-Appellees.

First District (5th Division)   No. 85—0568

Opinion filed August 19, 1986.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford, Jean M. Templeton, and Daniel G. Welter, Assistant Corporation Counsel, of counsel), for appellant.

Clifford L. Weaver, Steven M. Elrod, and Nancy L. VanSwol, all of Burke, Bosselman & Weaver, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Defendants were issued citations for violation of section 27—371.1 of the Municipal Code of Chicago (1984), banning outdoor advertising signs or displays in certain residential districts of the city. On a motion to dismiss, defendants alleged that the ordinance was unconstitutional because it restricted their first amendment right to commercial free speech and that it was impermissibly vague and overbroad. After conducting a hearing on the motion, the trial court held that section 27—371.1, while not vague, infringed on defendants' constitutionally guaranteed right to freedom of speech without a commensurate reason or need. On appeal, plaintiff argues in favor of the constitutionality of the ordinance on the basis that it is (a) a proper regulation of

commercial speech under the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343; (b) an important and proper exercise of the city's police power; (c) clearly applicable to advertising and commercial speech; and (d) is a content-neutral regulation.

We affirm.

The individual defendants, all of whom are real estate brokers or agents, put up "For Sale" or "Open House" signs in the front lawns of various homeowners' property in a predominantly white residential area of the city. Plaintiff issued quasi-criminal citations to each of the defendants alleging a violation of section 27—371.1 of the Chicago Municipal Code. That section makes it unlawful to place any outdoor advertising sign or display within a residential district classified as R1, R2 (single family), and R3 (general). The ordinance, passed by the city council on October 12, 1983, was enacted purportedly to prevent substantial hazards to traffic safety and to preserve the residential integrity and appearance of the community.

On July 20, 1985, after plaintiff had filed its notice of appeal and supporting brief, the city council repealed section 27—371.1 and adopted a revised version of the statute. The new ordinance is essentially the same as its predecessor with the sole exception that it (1) bans "commercial outdoor advertising" instead of "outdoor advertising"; (2) specifically exempts religious, charitable, and patriotic signs; and (3) directs the advertising prohibition to the owner of the property on which the sign is located rather than to the person causing the advertising sign to be displayed.

For purposes of judicial economy and convenience each of the individual citations were consolidated in a single case. Plaintiff appeals from the order of the trial court entered on February 25, 1985, dismissing all citations.

OPINION

The single issue presented by this appeal is whether the city's ordinance prohibiting outdoor advertising signs and displays in certain residential districts in Chicago unlawfully infringes on the defendants' constitutionally guaranteed freedom of speech without advancing a substantial governmental interest.

■ Before reaching the merits of this appeal, however, we must first address the contention made by some of the defendants that the appeal should be dismissed because the issues presented have been rendered moot by the city's repeal of the subject municipal code section. These defendants reason that because the old section no longer

exists and because the constitutionality of the new ordinance is not before this court, the decision hereby rendered can no longer affect the issue on appeal. We disagree.

Where portions of an ordinance or statute are repeated and retained in the amendatory enactment, or when there is a simultaneous repeal and reenactment, such an amendatory ordinance or statute will not affect the rights, duties or liabilities accrued under former portions of ordinance which have been reenacted. (*Village of Park Forest v. Wojciechowski* (1963), 29 Ill. 2d 435, 194 N.E.2d 346.) In the present case, the amendatory ordinance repeated almost verbatim the provisions of the original regulation. The only changes between the two provisions which bear some importance to this determination can be found in the words "commercial outdoor advertising" instead of simply "outdoor advertising," and in the fact that the advertising prohibition has been directed towards the owner of the premises where the sign is placed rather than the individual causing the sign to be displayed. Regardless of these changes, however, plaintiff still retains the right to prosecute the defendants under the former section. The amendatory ordinance was enacted while charges against defendants were pending. Since the new regulation did not expressly reflect a legislative intent to completely revise or substitute the provisions theretofore in effect but essentially remained the same as its predecessor, we find it difficult to believe that the city intended for the defendants to be relieved of punishment for their alleged offenses as a result of the amendment. The reenactment of the subject ordinance did not therefore affect the prosecution for offenses previously committed or render the case moot.

■ Further, even assuming *arguendo* that the present appeal is moot, we believe the issue regarding the constitutionality of a law making the placement of outdoor advertising signs and displays in residential areas of the city unlawful is of sufficient public interest to warrant consideration. Under the public-interest exception to the mootness rule three criteria must be considered: (1) the public nature of the question; (2) the desirability of an authoritative determination for the purpose of guiding public officers; and (3) the likelihood that the question will recur. (*Illinois Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71, 410 N.E.2d 98.) The legislative declaration found in the preface to section 27—371.1 of the Code not only reflects the importance of traffic safety and the appearance of residential communities to both private citizens and the municipality, but also the intention of the city council to establish a unified city-wide program to remedy the distraction created by the

placement of such signs and displays. Moreover, the need for the law-enforcement agencies to understand their respective roles in enforcing these regulations is great in light of the importance the city has attached to traffic and aesthetic matters. Finally, since selling a house is of vital interest to the residents of the city and any regulation undertaken by the government may bear on the all-important decision of where to live and raise their families it is likely that the question concerning the prohibition of "For Sale" signs will recur. We will therefore consider the specific contentions raised by plaintiff in this appeal.

In urging this court to enter judgment in its favor and hold the ordinance inviolate of the first amendment, plaintiff contends that section 27—371.1, insofar as it regulates commercial speech and directly advances the city's interest in eliminating traffic hazards and preserving the appearance of the community, meets the constitutional requirements set forth by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343. Under *Central Hudson,* the protection available for commercial speech depends on the nature both of the expression and of the governmental interests served by its regulation. The expression itself "must concern lawful activity and not be misleading." (447 U.S. 557, 566, 65 L. Ed. 2d 341, 351, 100 S. Ct. 2343, 2351.) Any restriction on otherwise protected commercial speech must have as its basis a substantial governmental interest, directly advance that interest, and extend no further than necessary to accomplish the given objective.

The expression in question in the instant case clearly concerns a lawful activity and is not misleading. As we noted in *City of Chicago v. Prus* (1983), 117 Ill. App. 3d 455, 468, 453 N.E.2d 776, 786, "there is nothing unlawful about selling a home, nor is the simple announcement of that fact misleading." It is also uncontroverted that the promotion of aesthetic and safety concerns constitutes a substantial governmental goal. However, even the show of a substantial interest may be insufficient to justify an infringement of first amendment rights. (See, *e.g., Linmark Associates, Inc. v. Township of Willingboro* (1977), 431 U.S. 85, 52 L. Ed. 2d 155, 97 S Ct. 1614.) The governmental entity imposing such restrictions must still establish that the law is necessary to achieve the stated objective. There is reason to believe that plaintiff in the instant case has failed to show a direct relationship between a ban on "For Sale" signs and the elimination of traffic hazards and visual clutter.

■ We initially note that plaintiff appears to have underestimated the importance of the particular commercial expression at issue. Al-

though commercial speech has traditionally been afforded less constitutional protection than other forms of expression, the "For Sale" sign has been judicially recognized to be a form of speech deserving "almost full constitutional protection" and requiring an even stricter standard of review than that formulated by the court in *Central Hudson.* (*City of Chicago v. Prus* (1983), 117 Ill. App. 3d 455, 470, 453 N.E.2d 776.) The reason for such distinction lies in the commonly held view that the information conveyed by a "For Sale" sign bears on one of the most important decisions an individual has the right to make: where to live and raise his family. (*Linmark Associates, Inc. v. Township of Willingboro* (1977), 431 U.S. 85, 52 L. Ed. 2d 155, 97 S. Ct. 1614.) Thus, a regulation restricting commercial expression may be held constitutionally invalid where the purpose of the restraint is to influence behavior by depriving individuals of information. See, *e.g., Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343.

■ The banning of "For Sale" signs in the instant case would undoubtedly restrict the free flow of vital information. As the court noted in *Linmark,* alternative channels for advertising real estate sales are not as effective as a "For Sale" sign, and cannot offset the adverse impact of a ban on such signs. A regulation of this kind would only serve to prevent the message from reaching individuals not deliberately seeking sales information. Furthermore, plaintiff's attempt to control the dissemination of real estate sales information exemplifies "the 'highly paternalistic' view that government has complete power to suppress or regulate commercial speech." (*Central Hudson Gas & Electric Corp. v. Public Service Com.* (1980), 447 U.S. 557, 562, 65 L. Ed. 2d 341, 348, 100 S. Ct. 2343, 2349.) It is precisely this attitude which the *Central Hudson* test was designed to guard against.

■ Under *Central Hudson* an ordinance may not be sustained "if it provides only ineffective or remote support for the government's purpose." (447 U.S. 557, 564, 65 L. Ed. 2d 341, 350, 100 S. Ct. 2343, 2350.) Plaintiff argues that section 27—371.1 directly advances its interest in promoting traffic safety and aesthetic values. However, with respect to the distracting effect of signs on drivers and pedestrians, we fail to see how a ban on "For Sale" signs alone can contribute to the elimination of traffic hazards. Although the stricken ordinance includes "[a]ny outdoor advertising sign or display," in practice, the City has only prosecuted "For Sale" or "Open House" signs while ignoring other similar alleged traffic hazards. Plaintiff cannot surely believe that a driver able to safely maneuver his vehicle while beset by a

myriad of distractions, including political advertisements, murals and bingo signs, will suddenly lose control by merely glancing at a "For Sale" sign. The singling out of real estate signs on residential front lawns cannot therefore directly advance the city's interest in promoting traffic safety.

■■■ We reach a similar conclusion with respect to plaintiff's assertion that its aesthetic concerns are sufficiently substantial to justify the chilling effect of section 27—371.1 on defendants' freedom of speech. When a governmental unit justifies a restrictive ordinance on the grounds that it promotes aesthetic values, the justification must be carefully scrutinized to determine if it is merely a public rationalization for an improper purpose. (*Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882.) While a real estate sign on residential front lawns may be perceived to be aesthetically offensive, the circumstances surrounding the issuance of citations in the instant case leads us to believe that an ulterior motive was at the root of plaintiff's decision to enact the subject ordinance. It is no secret that "For Sale" signs have been linked to panic selling and that many believe that signs alone can cause sudden panic among homeowners living in proximity to a minority neighborhood. The record reveals that the citations issued here involved a demographic area that is predominantly white. Plaintiff appears to have assumed that the proscription of such signs would prevent "white flight" by reducing public awareness of potential realty sales and thereby decreasing public concern over selling. But even assuming *arguendo* that plaintiff's underlying objectives in banning "For Sale" signs were proper, it may not rely upon any assumptions but rather must prove that the ordinance directly affects its interests. (*City of Chicago v. Prus* (1983), 117 Ill. App. 3d 455, 453 N.E.2d 776.) While the appellate court when faced with challenges to a municipality's exercise of its police powers is generally willing to defer to the legislature on matters of what best serves the public, the burden is on the governmental entity to justify its restrictions where the challenge involves a violation of first amendment guarantees. (*City of Chicago v. Prus* (1983), 117 Ill. App. 3d 455, 453 N.E.2d 776.) Plaintiff here has not even attempted to prove that this regulation would prevent "white flight." Plaintiff has also failed to produce any evidence that the regulation served its substantial interest in improving traffic safety and the appearance of the city. We further note that this situation is not one where common sense may dictate, in the absence of proof on this issue, that a relationship exists between the subject law and the municipality's stated objectives. (See, *e.g., Metromedia, Inc. v. City of San*

*Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882.) Accordingly, the trial court's findings that section 27—371.1 is unconstitutional because it does not serve an "overriding public need' will not be disturbed.

Having determined that the subject ordinance does not directly advance plaintiff's stated objectives, we need not consider the issue of vagueness.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.