Louis PRUS, et al., Plaintiffs,

v.

CITY OF CHICAGO, Defendant.

No. 84 C 8626.

United States District Court,
N.D. Illinois, E.D.

April 21, 1989.

MEMORANDUM OPINION
AND ORDER

PLUNKETT, District Judge.

Plaintiffs Louis Prus and the Northwest Side Real Estate Board bring a constitutional challenge to Defendant City of Chicago's ordinance regulating commercial advertising in certain residential neighborhoods. Currently before us is Plaintiffs' motion for summary judgment. For the reasons set forth below, we find the ordinance to be unconstitutional, and therefore grant summary judgment on the constitutional issue. The issues of damages and attorney's fees, however, are reserved for later determination.

BACKGROUND

The current ordinance represents the City's latest in a series of attempts to draft a constitutionally valid ordinance regulating for-sale signs and/or commercial advertising in residential neighborhoods.[1] This court previously issued a preliminary injunction against enforcement of Ch. 27, Section 27–371.1 of the Municipal Code of Chicago, a "traffic and aesthetic" ordinance which barred commercial outdoor advertising signs and displays in residential neighborhoods zoned R1, R2, and R3. *See* Order Granting Preliminary Injunction, 84 C 8626, Oct. 18, 1985. In explaining our determination that Plaintiffs had shown a likelihood of success on the merits, we stated as follows:

> The court agrees with plaintiff's expert witness, Robert Hamilton, who testified that a ban on all commercial outdoor advertising in residential areas would have no impact on traffic safety. While the issue of aesthetics is a closer question, the court finds that the ordinance has only a limited effect.
>
> Other evils, such as block busting and panic pedaling, have been mentioned. However, all witnesses agree that there has been no recent problem with these evils, so the court cannot consider them as an offsetting factor.

*Id.* at 2. After the parties had elected to stand upon the evidence submitted at the preliminary injunction hearing, we entered a permanent injunction. *See* Final Judgment Order, Nov. 27, 1985. The City ap-

---

1. Some idea of the history of the City's efforts may be gleaned from the cases of *City of Chicago v. Prus,* 99 Ill.App.3d 473, 54 Ill.Dec. 561, 425 N.E.2d 426 (1st Dist.1981); *City of Chicago v. Prus,* 117 Ill.App.3d 455, 72 Ill.Dec. 901, 453 N.E.2d 776 (1st Dist.1983); and *City of Chicago v. Gordon,* 146 Ill.App.3d 898, 100 Ill.Dec. 464, 497 N.E.2d 442 (1st Dist.1986). As we shall discuss in text, this court has also ruled on the validity of a previous ordinance.

pealed, and Plaintiffs filed a cross-appeal challenging our refusal to award attorney fees. The City, however, filed a motion to voluntarily dismiss their appeal, and the Seventh Circuit remanded the appeals to this court "with leave to the plaintiffs to amend their pleadings to demonstrate that the old ordinance retains any continuing force or to attack the new ordinance." *See* Order, 86–1003 and 86–1031, Dec. 23, 1986. Plaintiffs have chosen to attack the new ordinance.

The preamble of the new ordinance reads as follows:

Whereas, The nature and character of residential areas of the City of Chicago should be preserved; and Whereas, Residential communities have been inundated with commercial advertising signs of various colors, shapes and sizes; and

Whereas, The placement of commercial outdoor advertising signs and displays in residential districts constitutes a traffic hazard because those signs create a distraction to drivers of vehicles, diverting their attention from the road, principally because such signs are unexpected in residential communities; and

Whereas, Such commercial advertising signs and displays also constitute a definite detraction and are aesthetically unacceptable to the appearance of residential communities....

Ch. 194A, Section 7.10–1(C) of the Municipal Code.

The ordinance then goes on to state the following restrictions on non-illuminated advertising signs in R1 single-family residence districts:

1. Advertising signs must not exceed a size of eighteen inches in height by eighteen inches in width.

2. Lettering on such signs must not consist of more than two colors, including background.

3. The advertising signs are limited to a description of the article for sale, an address, and a telephone number to call for more information regarding the sale.

4. If an improvement exists on a parcel of realty, commercial advertising signs must be affixed to the improvement. If no improvement exists on the realty, the signs may be displayed on the unimproved parcel.

*Id.*

The ordinance was passed by the City Council on May 30, 1986. On January 16, 1987, the Council amended the ordinance to provide that the name of a real estate company may not appear on for-sale signs in lettering greater than one-eighth inch in height. The City concedes, however, that this amendment is unconstitutional as neither content-neutral nor reasonable, and defends only the validity of the ordinance as originally passed.

## DISCUSSION

The general criteria by which courts are to judge restrictions on commercial speech are set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed. 2d 341 (1980). In *Central Hudson*, the Supreme Court held that where the communication is neither misleading nor related to unlawful activity, the state must first assert a substantial interest to be achieved by the restriction. *Id.* at 564, 100 S.Ct. at 2350. Secondly, the limitation must be carefully designed to meet the state's goal. *Id.* Two factors must be present to satisfy the second prong of this test. First, "the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Id.* In addition, the government must use the least restrictive means available. *Id.*

We find that the ordinance fails to pass constitutional muster under this test. It is clear that both traffic safety and aesthetics are substantial state interests. *See Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981) (plurality) (aesthetics and traffic safety); *see also City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806–07, 104 S.Ct. 2118, 2129–30, 80 L.Ed.2d 772 (1984) (aesthetics). We previously found, however, that a complete ban on commercial outdoor advertising signs had no impact on traffic safety and only a limited effect on aesthetics. As the parties have not asked to supplement the evidentiary record, our

previous findings are equally applicable to-day. If a complete ban on outdoor advertising signs has no impact on traffic safety and only a limited effect on aesthetics, it is clear that the state's current regulation of signs does not "directly advance the state interest involved," but rather "provides only ineffective or remote support for the government's purpose." [2] *Central Hudson*, 447 U.S. at 564, 100 S.Ct. at 2350. Thus, the ordinance must fall under *Central Hudson*.

The ordinance also fails the special set of rules to be applied where a time, place and manner restriction is at issue. Such restrictions are permissible if they 1) are justified without reference to the content of the regulated speech, 2) serve a significant governmental interest, and 3) leave open ample alternative channels for communication. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed. 2d 346 (1976); *Metromedia*, 453 U.S. at 516, 101 S.Ct. at 2897. Of vital importance to our analysis of the "alternative channels" requirement is the Supreme Court's opinion in *Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). In *Linmark*, the city of Willingboro, New Jersey had attempted to ban for sale signs, and argued that the restriction was properly analyzed as a time, place and manner restriction because it restricted only one method of communication. *Id.* at 93, 97 S.Ct. at 1618. The Court ultimately rejected the argument that the ban was a time, place and manner restriction, but not before stating the following:

> [S]erious questions exist as to whether the ordinance "leave[s] open alternative channels for communication." Although in theory sellers remain free to employ a number of different alternatives, in practice realty is not marketed through leaflets, sound trucks, demonstrations, or the like. The options to which sellers real-istically are relegated—primarily newspaper advertising and listing with real estate agents—involve more cost and less autonomy than "For Sale" signs; are less likely to reach persons not deliberately seeking sales information; and may be less effective media for communicating the message that is conveyed by a "For Sale" sign in front of the house to be sold. The alternatives, then, are far from satisfactory.

*Id.* (citations omitted); *see also Metromedia*, 453 U.S. at 516, 101 S.Ct. at 2897 (quoting *Linmark*). In light of *Linmark*, we cannot find that the ordinance leaves open adequate alternative channels of communication, and strike the ordinance on this ground as well.

## CONCLUSION

For the foregoing reasons, we find the City's ordinance to be unconstitutional, and therefore grant summary judgment on the constitution question. The issues of damages and attorney's fees, however, are reserved for later determination.

---

**2.** We also note the plurality's reminder in *Metromedia* that "esthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." 453 U.S. at 510, 101 S.Ct. at 2894. In this regard, we must point out that the City's decision to regulate only *non*-illuminated signs surely raises some question as to the sincerity of the City's professed interest in aesthetics. We need not, however, delve into this issue given our finding that the purposes set forth by the City are furthered only marginally or not at all by its regulation of outdoor advertising.